Ellen McElroy

*v.*

The People of the State of Illinois.

*Opinion filed April 24, 1903.*

1. Criminal law—*a general verdict will sustain conviction if one or more counts are good.* A general verdict of guilty will sustain a conviction where one or more of the several counts are good.

2. Embezzlement—*what necessary to constitute the crime of embezzlement.* Under the statute, in order to constitute the crime of embezzlement the fraudulent conversion must be of property belonging exclusively to a person other than the one charged.

3. Same—*when agent is not guilty of embezzlement.* An agent employed to solicit subscriptions on commission and authorized to deduct her commissions from the amount collected is joint owner with the principal of the gross amount collected, and her conversion of the money is not embezzlement.

4. Instructions—*right of jury to consider corroborative evidence in weighing testimony of accused.* If the jury are instructed, at the instance of the People, that they may, in weighing the testimony of the accused, consider whether she has been contradicted by other witnesses, the accused is entitled to have the jury instructed that they may also consider whether she has been corroborated by credible evidence.

Writ of Error to the Criminal Court of Cook county; the Hon. Abner Smith, Judge, presiding.

P. H. Moroney, and Samuel Richolson, for plaintiff in error.

H. J. Hamlin, Attorney General, Charles S. Deneen, State's Attorney, and F. L. Barnett, for the People.

Mr. Justice Wilkin delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of larceny by embezzlement, and sentenced to the penitentiary. The indictment contained eight counts. The first six are in substantially the language of section 75 of the Criminal Code, (Hurd's Stat. 1901, p. 604,) charging that she was an agent, to-wit, a collector and solicitor, for the Catholic Press Company, and as such collected and embezzled the funds of the company to the amount of $106.50. The seventh count charged her with simple larceny, and the eighth with receiving money knowing it to be stolen. There was a motion to quash the indictment and each count thereof, which was overruled, and that ruling is here assigned as error.

The seventh count was bad, (*Kibs* v. *People*, 81 Ill. 599,) but the first six are good. (*Lycan* v. *People*, 107 Ill. 423; *Ker* v. *People*, 110 id. 627.) There was a general verdict of guilty, and the rule is, that where there are several counts and the verdict is general, one or more good counts will sustain the conviction.

Among other defenses relied upon, it was insisted that the money which the defendant was charged with embezzling was a sum in which she had an interest by way of commissions. She was employed by one Hubbard, manager of the Catholic Press Company. The agreement was by parol. Both she and Hubbard testified that by the contract of employment she was to solicit subscriptions for a publication called *The New World*, and receive a commission of fifty cents for each cash subscriber of two dollars. If charged on the books she was to receive but forty cents, and for each cash subscription which "lapsed" she was to refund ten cents. Hubbard claimed that the gross amount received by her was to be brought in weekly and paid to him, out of which he was to pay her the commissions. Her conten-

tion was that she was to retain the amount of her commissions out of the collections and only pay over the balance. The weight of the testimony supports her understanding of the contract. Hubbard said, on cross-examination: "The understanding I had with this woman was that she was to work on a commission. She had the right to deduct her commissions if there was anything to deduct from." The employment was from March 1, 1901, to about the end of the year. During the fall, in August and September, he wrote her certain letters, in one of which he stated: "On examining your accounts to date I find that you owe us $106.50, net." When asked what he meant by using the word "net," he answered, "Why, after all her compensation had been paid." And again: "Does this letter in which you say, 'on examining your accounts to date I find that you owe us $106.50, net,' mean that she had a right to retain her commissions? How do you make up that account?" He answered: "After giving her all her commissions I find she owed us $106.50. I gave her forty cents for each subscriber she reported, and then I took the collections which she paid in and also some she had not, and gave her the benefit of the collections she had not paid in on the presumption that she would pay it some day."·

Section 75, *supra*, is as follows: "If any officer, agent, clerk, or servant of any incorporated company; or if a clerk, agent, servant or apprentice of any person or copartnership, or society, embezzles or fraudulently converts to his own use, or takes and secretes with intent so to do, without the consent of his company, employer or master, any property of such company, employer, master, or another, which has come to his possession, or is under his care by virtue of such office or employment, he shall be deemed guilty of larceny." By this statute, in order to constitute the crime of embezzlement the fraudulent conversion must be of the property of another. If the plaintiff had a right to deduct her commissions

from the gross amount collected, then to that extent the
money belonged to her,—that is, she and the company
owned the gross sum jointly. The law is, that where a
defendant has an interest in the property or money al-
leged to have been fraudulently converted to his or her
own use there can be no conviction of the crime of em-
bezzlement. (10 Am. & Eng. Ency. of Law, 985, and cases
cited in note 7.) In the case of *State* v. *Kusnick*, 45 Ohio
St. 535, there cited, (reported in 4 Am. St. Rep. 567,) the
court said: "It is true that at common law, to constitute
larceny, the thing alleged to have been stolen must be
the property of another person than the offender. It is
also true that the statutes of nearly all the States which
undertake to define embezzlement, require that the sub-
ject of the offense shall be shown to be property of an-
other; and this has almost universally been construed to
mean that it must be wholly the property of another."

In the case of *State* v. *Kemp*, 22 Minn. 41, (21 Am. Rep.
764,) the defendant was collector of pew rents for a
church, under an agreement that he was to have five
per cent of all the rents, no matter who collected them.
He failed to turn over all the money collected and was in-
dicted for embezzlement under a statute similar to ours,
and the court said: "The effect of this agreement was to
vest in the defendant an undivided one-twentieth inter-
est in the rents collected, and to that extent make him
an owner jointly with the corporation. In other words,
the money was not the property of the corporation, but
the joint property of the corporation and the defendant.
It was therefore not the property of another than the
defendant."

In *Commonwealth* v. *Libbey*, 11 Metc. 64, (45 Am. Dec.
185,) the defendant had been employed by a firm of news-
paper publishers to collect bills for a certain commission,
and he, as was alleged, failed to pay over certain col-
lections made by him but converted the same to his own
use. In deciding the case the Supreme Court of Massa-

chusetts said: "In the case of domestic servants, and to some extent in the case of special agency, the right of the property and the possession continues in the principal, and a disposal of the property would be a violation of the trust and an act of embezzlement. But the case of commission merchants, auctioneers, and attorneys authorized to collect demands, stands upon a different footing, and a failure to pay over the balance due their employers upon their collections will not submit them to the heavy penalties of embezzlement."

Other authorities are to the same effect, and the cases which seem to announce a different doctrine are founded upon statutes unlike ours.

The jury were instructed, at the instance of the People, that "as a matter of law an agent engaged in the service of another, selling goods on commission on such sales, will be guilty of embezzlement in appropriating to his or her own use money so collected, where, by the terms of his employment, he is required to remit or pay over such collections to his principal and is not permitted to mingle the same with his or her own money." This instruction had no proper application to the case. The defendant was not employed in selling goods on commission or percentage for the company, and it was clearly misleading and erroneous when applied to the facts in this record.

The defendant asked the court, but the court refused, to instruct the jury on her behalf, "that if they believed, from the evidence, that she was, at the time of the alleged embezzlement, a collector for the company with the right to retain her commissions,—that is, that she was not required to pay over to the company the gross sum or sums of money collected by her, but might first deduct her commissions and then pay over the balance or net amount due the company,—she was not such an agent or servant as is contemplated in the statute defining embezzlement, and the verdict should be not guilty."

This instruction, under the foregoing authorities, laid down the proper rule of law, and it was error to refuse it.

Defendant also asked the following instruction, which . was refused:

"The defendant is a competent witness in her own behalf, and you have no right to discredit her testimony from caprice nor merely because, she is the defendant. You are to treat her the same as any other witness, and subject her to the same tests, and only the same tests, as are legally applied to other witnesses, and while you have the right to take into consideration the interest she may have in the result of this trial, you have also the right, and it is your duty, to take into consideration the fact, if such is the fact, that she has been corroborated by other credible evidence."

At the instance of the People the court had instructed the jury that "the defendant was permitted to testify in her own behalf, and in doing so became the same as any other witness, her credibility to be tested by and subject to the same tests as are legally applied to any other witness, and in determining the degree of credibility that shall be accorded to her testimony the jury have a right to take into consideration the fact that she is interested in the result of this prosecution, as well as her demeanor and conduct upon the stand, and the jury are also to take into consideration the fact, if such be the fact, she has been contradicted by other witnesses." If the jury had the right, as they undoubtedly did, to consider whether she had been contradicted by other witnesses in giving weight to her evidence, why, in common justice, was she not entitled to have the jury told to take into consideration the fact, if such was the fact, that she had been corroborated by other credible evidence? We think the court erred in refusing to give the instruction asked, to that effect.

We are also of the opinion that the evidence failed to prove with that degree of certainty required by the rules

of evidence in criminal cases, that the defendant fraudulently converted to her own use, or took and secreted with intent so to do, without the consent of her employer, the money in question. The only evidence of a criminal intent is the inference to be drawn from the act itself. She at no time denied or attempted to conceal the indebtedness. In answer to the letters of Hubbard she went several times to his office for an accounting, and explained to him how she came to use the money, promising to pay it as soon as she could mortgage some property or otherwise procure the amount. He caused her arrest, and then directed the officer to let her go upon her promise to raise the money within a given time. Two months later he again had her arrested, because, as he said, she had not lived up to her agreement in regard to paying the money. While she was not justifiable in using money belonging to her employer, it does not follow that she was guilty of the crime of embezzlement. The criminal law cannot be properly used by individuals to enforce the payment of debts, and that seems to have been the motive of the prosecuting witness in putting this prosecution upon foot.

It is assigned for error "that the trial court made remarks and comments at the trial, and in the presence of the jury, which were prejudicial to the defendant." We regret to say that the abstract of the record in this case shows substantial grounds for that alleged error, but as the judgment below must be reversed for the reasons above stated, we refrain from further commenting upon this branch of the case.

The judgment of the criminal court will be reversed and the cause remanded for another trial.

*Reversed and remanded.*