## STATE v. HARCOMBE.

No. 2910.   Decided June 24, 1916.   (158 Pac. 1096.)

1. CRIMINAL LAW—EVIDENCE—EFFECT ON PARTY PRODUCING. In a prosecution for embezzlement of money of a law firm, under Comp. Laws 1907, Section 4380, relating to embezzlement by a clerk, servant or agent, the state, having produced checks made to the order of clients, received and deposited to his own account by the defendant, as evidence, is bound thereby. (Page 93.)

2. EMBEZZLEMENT—INFORMATION—VARIANCE—OWNERSHIP OF FUNDS. Under Comp. Laws 1907, Section 4380, providing that a clerk, servant, or agent who appropriates the property of his employer is guilty of embezzlement, where the defendant, an attorney, entered into an arrangement with a firm of attorneys to supervise their collection business and without apparent authority

indorsed checks made out to the order of clients of the firm and deposited them to his own account, he neither obtained any right to the money himself nor conferred any upon the firm by his wrongful act, and hence was not guilty under an information charging him with appropriating the firm's money. (Page 93.)

3. INDICTMENT AND INFORMATION—SEPARATE COUNTS—ELECTION. In a prosecution for embezzlement, where the state to prevent a variance charges the transaction in different counts, it cannot be required to elect upon which count it will ask a conviction until the evidence is before the court and jury from which the nature or character of the transaction may be determined. (Page 94.)

4. EMBEZZLEMENT—INFORMATION—VARIANCE. In a prosecution for embezzlement under Comp. Laws 1907, Section 4380, a conviction of the embezzlement of money cannot be sustained by evidence of the embezzlement of checks. (Page 97.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

William W. Harcombe was convicted of embezzlement and he appeals.

REVERSED and remanded for new trial.

*J. N. Kimball,* for appellant.

*A. R. Barnes,* Atty. Gen., and *E. V. Higgins* and *G. A. Iverson,* Asst. Attys. Gen., for the State.

FRICK, J.

The defendant was convicted of the crime of embezzlement, and appeals.

In the information it is charged:

"The defendant, William W. Harcombe, on or about the month of February or March, 1915, at Ogden City, Weber County, State of Utah, he then and there being the agent and clerk of C. A. Boyd, J. H. De Vine, and Royal Eccles, copartners doing business under the name and style of Boyd, De Vine & Eccles, did fraudulently appropriate to his own use and secrete with a fraudulent intent to .appropriate to his own use money in the amount of $375.00, which had come into his control by virtue of his employment as such agent and

clerk, said money having been collected by said defendant from one D. Rosenthal, proprietor of the Golden Eagle Clothing Company in Ogden City, Weber County, State of Utah, and which money was then and there the property of said Boyd, De Vine & Eccles.''

The information is based upon Comp. Laws 1907, Sec. 4380, which reads:

''Every clerk, agent, or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement.''

The material undisputed facts, in substance, are as follows: In January, 1913, C. A. Boyd, J. H. De Vine, and Royal Eccles, attorneys at law, at Ogden, Utah, formed a copartnership for the purpose of pursuing the practice of law under the firm name of Boyd, De Vine & Eccles. In connection with the general practice of law, the firm was also engaged in the collection business; that is, they, as Mr. Boyd said, also had a collection department, which, it seems, was under his immediate supervision. In order to give exclusive attention to the general law practice, the firm, in the spring or summer of 1914, entered into an arrangement with the defendant, who was a young lawyer at Ogden, to come into the office of the firm for the purpose of attending to certain legal matters for the firm as they should from time to time arise. The defendant was given desk room and all office supplies, including the services of the firm's stenographer, and was to receive for his services fifty dollars per month. He was also to attend to the making of the collections received by the firm from collection agencies and others, and for those services, in addition to said fifty dollars per month, he was to receive one-half of the regular commissions obtained for making the collections. The defendant was to account to the firm of Boyd, De Vine & Eccles for all collections made by him, and said firm from time to time paid him his share of the commissions. The defendant was to retain and continue to attend to his own private law business. The defendant, it seems, attended

to the making of collections, and in conducting that branch of
the business he signed the letters or correspondence passing
between him and the firm's clients in the name of Boyd, De
Vine, Eccles & Harcombe.  It also seems that in case any
papers in connection with said collection business were filed
in court by him, he also signed them in that way.  Neither
one of the three members of the firm, however, signed any
correspondence or papers except in the regular firm name of
Boyd, De Vine & Eccles.  Matters ran along in that way until
the months of February and March, 1915, when the defend-
ant collected a certain claim from one D. Rosenthal which
had been theretofore received by the firm in the regular course
of business.  The claim against said Rosenthal amounted to
$375, the amount stated in the information.  On the 8th day
of February, 1915, the defendant received a check from said
Rosenthal drawn on the Commercial National Bank of Ogden
for $100 payable to the order of a creditor to which said
Rosenthal was indebted.  Two days later the defendant re-
ceived another check from said Rosenthal for $100 on the same
bank and made payable to the order of another creditor of
said Rosenthal.  On March 16th following, the defendant re-
ceived two checks more from said Rosenthal, one for $100 and
the other for $75, drawn on the same bank and made payable
to the same creditors as the other two checks.  All of the
checks were signed, "D. Rosenthal."  The defendant indorsed
the names of the creditors to whose order the checks were
made payable without any apparent authority so to do and
deposited the checks in the bank and received credit in his
own name for the amount of the checks.  The defendant failed
to account either to the firm of Boyd, De Vine & Eccles or to
the creditors in whose favor the checks were drawn.

After the State had, in substance, proved the foregoing
facts, together with the necessary jurisdictional facts, the de-
fendant's counsel requested the court to instruct the jury to
return a verdict of "not guilty," for the reason that the State
had failed to prove that the defendant was the "agent or
clerk" of said Boyd, De Vine & Eccles, and for the further
reason that the State had failed to prove that the money
which it was charged the defendant had "appropriated to

his own use," or any part thereof, was the money of said Boyd, De Vine & Eccles. The court refused to so charge, and the defendant excepted to the court's ruling in that regard and has assigned the same as error.

Proceeding to a consideration of the second proposition first, we inquire whether such firm of Boyd, De Vine & Eccles was the owner of the money which it is charged in the information the defendant "appropriated to his own **1, 2** use." The State having produced the checks which the defendant received and deposited as aforesaid as evidence of the embezzlement, it is bound by that evidence. We are unable to understand how that evidence establishes the charge that the money represented by the checks was the money of the firm of Boyd, De Vine & Eccles. The money in the bank, on which the checks were drawn by Mr. Rosenthal, was clearly and beyond dispute his money. The checks were made payable to the order of Rosenthal's creditors and to no one else. The bank had no legal right to pay Rosenthal's money except in accordance with his order which was contained in the checks signed by him. That order authorized the bank to pay money to the creditors named in the checks or to their order. The bank had no authority to pay the bearer of the checks, the defendant. The defendant certainly did not transfer, nor could he have transferred, the title to Rosenthal's money which was on deposit in the bank and against which the checks were drawn, or any interest therein, or right thereto, to the firm of Boyd, De Vine & Eccles by his wrongful act. What title or right an innocent person might have obtained by receiving the money in good faith from the defendant we need not consider here. It is enough, for the purposes of this case, to know that the defendant neither obtained any right to the money himself, nor did he confer any upon the firm by his wrongful act. There can be no question concerning the bank's legal liability to Rosenthal in failing to pay his money in accordance with his order contained in the checks, should Rosenthal choose to sue the bank and prove that he was prejudiced by its act. From the foregoing, it necessarily follows that the evidence is conclusive that the firm of Boyd, De Vine & Eccles had no legal title in or claim

upon the money which Rosenthal ordered paid to his creditors. True, they had a claim for their commission as against Rosenthal's creditors, who were their clients. That claim was merely personal, however, since the firm could not have sued the bank if it had paid the checks precisely as drawn by Rosenthal, for the simple reason that it had no legal interest in them, nor in the money represented by them. Rosenthal exercised his legal right by making his checks payable to his creditors. Having done that, the mere fact that Boyd, De Vine & Eccles had a claim for collection against such creditors, who were their clients, gave them no right or title to any specific money belonging to Rosenthal which was on deposit in the bank to his credit. The firm could not have acquired a lien for its services upon the money until it had reduced it to possession, and could acquire no lien, under our statute, upon the cause of action of their clients until they had filed a complaint in an action against Rosenthal. The State seems to contend, however, that, inasmuch as the defendant was the "agent and clerk" of the firm of Boyd, De Vine & Eccles, defendant's possession was the firm's possession. There would be much force to that contention if the checks in question had been made payable to Boyd, De Vine & Eccles, or to their order, instead of the creditors of Rosenthal, or if the debt or claim had in law and fact belonged to that firm. Under the undisputed facts, however, the firm of Boyd, De Vine & Eccles was not the owner of the money as alleged in the information, and hence the court erred in refusing to charge as requested.

In view that we have reached the conclusion that, as matter of law, the firm of Boyd, De Vine & Eccles was not the owner of the money in question, it becomes wholly immaterial what the real relation was between said firm and the defendant in so far as the collections were concerned. We therefore express no opinion upon the first proposition urged by the defendant.

The defendant, however, insists upon another assignment which, in view that we are required to reverse the judgment and remand the case, is material. Defendant's counsel contends that, under the undisputed facts, the de-          3

fendant was not guilty of embezzlement of money, as charged in the information, but that if he was guilty of any offense it was for the embezzlement of the checks introduced in evidence. Whether, under the undisputed facts in this case, the transaction disclosed by the evidence constituted the embezzlement of money or the embezzlement of negotiable instruments or mere evidences of debt the authorities, are somewhat in conflict. The defendant has cited *Carr* v. *State,* 104 Ala. 43, 16 South. 155; *State* v. *Mispagel,* 207 Mo. 557, 106 S. W. 513; *State* v. *Castleton,* 255 Mo. 201, 164 S. W. 492, and *People* v. *Meseros,* 16 Cal. App. 277, 116 Pac. 679, in all of which it was squarely held that transactions like those in this case do not support a charge of the embezzlement of money, but constitute the embezzlement of checks or evidence of debt merely. In all of the foregoing cases, judgments of conviction were reversed for the reason that the proof did not support the charge made in the language of the information in this case, namely, the embezzlement of money. Upon the other hand, the State cites *Bartley* v. *State,* 53 Neb. 310, 73 N. W. 744; *Territory* v. *Hale,* 13 N. M. 181, 81 Pac. 583, 13 Ann. Cas. 551; *State* v. *Palmer,* 40 Kan. 474, 20 Pac. 270; *State* v. *Krug,* 12 Wash. 288, 41 Pac. 126; *People* v. *McKinney,* 10 Mich. 54; and *People* v. *Leavens,* 12 Cal. App. 178, 106 Pac. 1103. The last case, like *People* v. *Meseros, supra,* which is cited by the defendant, emanates from the same court, namely, the California Court of Appeals. There is, however, no conflict between the two cases, since in the last case, the one cited by the State, the question of obtaining money by false pretenses was involved. The same is true with respect to the case cited by the State from Kansas—*State* v. *Palmer, supra.* Those two cases are therefore clearly distinguishable from the case at bar and from the other cases cited by the State: All the other cases cited involve the embezzlement of public funds and are based upon statutes which denounce that offense. It is quite true that in several of those cases it is directly held that if A. obtains a check or other evidence of debt, such as a warrant, a certificate of indebtedness, or bill of exchange, from B. which is payable to the order of C. and is the latter's property, and B. nevertheless, indorses the same

and receives payment from the bank or has the proceeds transferred to his credit and appropriates them to his own use, B. may be found guilty of having embezzled money. What is said in those cases is, however, said in connection with the facts there shown and with regard to the statute upon which the charges were based.

If, in the case at bar, the checks in question had been made payable to the firm of Boyd, De Vine & Eccles, and the money represented by them was that firm's money, there would be more force to the State's argument. It is, however, quite apparent that the charge in this case was for the embezzlement of money and was made because the State could not have proved that the checks were the property of the firm of Boyd, De Vine & Eccles. The mere production of the checks would clearly have shown that they did not belong to that firm. The State therefore charged that the defendant had embezzled the money, instead of the checks. But even that charge, for the reasons stated, was not proved. It is true that the prosecuting officers may sometimes be in doubt whether, under a certain state of facts, a particular transaction constitutes the embezzlement of money or checks or other evidences of indebtedness, or what facts ultimately may be disclosed by the evidence. In all such cases, however, the State can suffer no injustice, since it may always charge the transaction in different counts and cannot be required to elect upon which count it will ask a conviction until the evidence is before the court and jury, from which the nature or character of the transaction may be determined. There may also be circumstances under which the ultimate facts are in doubt so that the whole question regarding the character of the transaction, under proper instructions, may be submitted to the jury, and they may find the facts, and upon the facts when found, base their verdict in accordance with the instructions from the court. Cases falling within the latter class, in the very nature of things, must be rare indeed. The State therefore may easily prevent a variance by stating the transaction in different counts and electing upon which count it will stand in accordance with the evidence produced. If that course had been pursued in this case and the checks had been the property of the firm of

Boyd, De Vine & Eccles, the State could have elected to stand upon the charge of embezzling checks instead of money.

The State has also cited section 54 of Morse on Banks & Banking. The only thing that is stated in that section is that the presentation of a check to the bank upon which it is drawn and the transfer of the proceeds to the credit of the person presenting the check constitutes payment of the check. Surely no one will dispute that proposition. Neither will any one seriously contend that that proposition has any bearing upon the transaction involved in this case.

The cases cited by the defendant, and to which we have referred, in which it is held that transactions like those in question constitute the embezzlement of checks, are 4 all well considered, and it is deliberately held that under statutes like section 4380, *supra,* a conviction of the embezzlement of money cannot be sustained. For the reasons stated, we feel constrained to follow those cases.

The judgment is reversed, and the case is remanded to the District Court of Weber County, with directions to grant a new trial.

STRAUP, C. J., and McCARTY, J., concur.