## STATE v. HORNE.

No. 4034.    Decided November 8, 1923.    (220 Pac. 378.)

1. EMBEZZLEMENT—OWNERSHIP OF CHECK NOT ACCOUNTED FOR BY SECRETARY HELD TO HAVE PASSED TO STATE FAIR ASSOCIATION. Where one complying with an advertisement bid for concessions at the state fair, giving his check, payable to the incorporated fair association, in advance payment therefor, to the association secretary, but, when a dispute arose over the price that he should charge for his goods, requested the secretary to hold the check for his protection against adverse action or interference by the association authorities, and the secretary accordingly deposited the check in his own name and failed to account for it, though the bidder had conducted his business undisturbed, the secretary's contention that legal ownership of the check never passed to the association failed, since he received the check in his official capacity.[1]

2. CRIMINAL LAW—FAILURE OF STATE FAIR SECRETARY TO ACCOUNT FOR FUNDS RECEIVED FROM CHECK DID NOT NECESSARILY IMPLY CRIMINAL INTENT. Where the secretary of the State Fair Association deposited in his own name a check to the association, received in his official capacity from one bidding for concessions, and failed to account for it to the association, and claimed that he acted in good faith to protect the bidder in a dispute with the fair authorities, it was error to instruct the jury that men are presumed to intend the natural consequences of their acts, and, if defendant failed to account for the check, the jury would be authorized to infer a criminal intent.[2]

3. CRIMINAL LAW—INSTRUCTION DEFINING "FELONIOUSLY" HELD ERRONEOUS. In a prosecution for embezzlement, an instruction defining "feloniously" as "a wrongful act willfully done" was too narrow, and hence prejudicial error in view of a defense of

[1] State v. Harcombe, 48 Utah, 89, 158 Pac. 1096, distinguished.
[2] State v. Coyle, 41 Utah, 320, 126 Pac. 305.

good faith, since the word means "malignant or malicious," and embraces the idea of deliberate evil intent (citing Words and Phrases, First and Second Series, "Felonious—Feloniously").

4. CRIMINAL LAW—"FELONIOUS" AND "FELONIOUSLY" MUST BE CAREFULLY EXPLAINED IN CHARGING JURY. The terms felonious and feloniously, though used in indictments without further definition, when used in instructions to the jury must be carefully defined or explained so that an act merely unlawful or wrongful in a civil proceeding may not be deemed to constitute a felony.

5. EMBEZZLEMENT—AGENT IN CASHING CHECK MUST HAVE ACTED WITH FRAUDULENT INTENT. To convict an agent of embezzling a check the jury must find not only that he cashed it but that he did so with fraudulent intent to deprive the principal of the money.

6. EMBEZZLEMENT—MISAPPROPRIATION OF FUNDS HELD INADMISSIBLE IN PROSECUTION LIMITED TO CHECK. In a prosecution for embezzlement of a check only introduction of evidence of embezzlement of the funds represented thereby was error, hence the court improperly admitted exhibits consisting of various contracts with which defendant had no connection, and certain reports of the state auditor showing shortage in his accounts.

7. EMBEZZLEMENT—FAILURE TO ACCOUNT FOR MONEY ADMISSIBLE TO PROVE EMBEZZLEMENT OF CHECK. Where one is charged with embezzlement of a particular check, evidence that he failed to account for the money obtained for the check would be proper if limited to showing failure to account for the check as an entirety.

8. EMBEZZLEMENT—VERDICT HELD NOT SUSTAINED BY THE EVIDENCE. In a prosecution limited to embezzlement of a check, a verdict, following improper admission of evidence showing shortage in defendant's accounts with the state, which shortage was less than the amount of the check, was not sustained by the evidence, though reciting that defendant was "guilty as charged in the information."

9. CRIMINAL LAW—OTHER OFFENSES ADMISSIBLE TO PROVE CRIMINAL INTENT. The state may prove that accused has committed other similar offenses to show criminal intent, but cannot thereby charge one offense and prove another.

10. CRIMINAL LAW—ADMISSION OF STATEMENT AGAINST INTEREST HELD NOT REVERSIBLE ERROR. In a prosecution limited to embezzlement of a check, it was not reversible error to admit de-

fendant's statement to the Governor when he delivered his resignation as secretary of the State Fair Association, in which he referred to discrepancies in his accounts, though evidence of embezzlement of funds, as distinguished from the check, was not admissible, the statement being one against interest.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

J. L. Horne was convicted of embezzlement, and he appeals.

REVERSED.

*H. L. Mulliner*, of Salt Lake City, for appellant.

*Harvey H. Cluff*, Atty. Gen., and *J. Robert Robinson*, Asst. Atty. Gen., for the State.

FRICK, J.

The defendant was convicted in the district court of Salt Lake county of the crime of embezzlement, and appeals.

In view of the errors assigned and the questions presented for decision it becomes necessary to set forth the charging part of the information upon which the conviction is based, which reads as follows:

"That the said J. L. Horne, at Salt Lake county, state of Utah, on the 15th day of September, 1921, he being then and there an agent of the Utah State Fair Association, a corporation organized and existing under and by virtue of the laws of the state of Utah, and by virtue of his being such agent, then said J. L. Horne came into possession of, was intrusted with, and had under his care and control, a $480 check drawn on the National City Bank of Salt Lake City, Utah, dated September 15, 1921, of the value of $480 lawful money of the United States of America, made payable to the Utah State Fair Association, and signed by Art Gardner, said check being the personal property of the said Utah State Fair Association, * * * and the said $480 check intrusted as aforesaid to the said J. L. Horne as such agent, he, the said J. L. Horne, in violation of his trust, did then and there willfully, unlawfully and fraudulently, and feloniously appropriate, embezzle, and convert * * * to a use not in the lawful execution of his trust, to wit, to his own use."

The check referred to in the foregoing information, which was produced in evidence, reads:

"THE NATIONAL CITY BANK. No. 699. Salt Lake City, Utah, Aug. 29, 1921. Pay to the order of Utah State Fair Association. $480, four hundred eighty and no/100 dollars.

[Signed]    Art Gardner."

The facts material here are to the effect that the check in question was issued by Art Gardner, and was delivered to the defendant as secretary of the Utah State Fair Association on August 29, 1921, as Gardner's bid for what are called the "hamberger" and "soda water" concessions, which Gardner intended to operate during the state fair which was held in the fall of 1921 at Salt Lake City. The Utah State Fair Association had advertised for bids for those and other concessions, and the bidders were required to deposit checks with their bids equal to the amount of their bids. Gardner had filed his bid for the two concessions mentioned, and, in compliance with the terms of the advertisement of the association, had deposited the check in question with the defendant as the secretary of the association. After the check had been deposited as and for the purpose aforesaid, some controversy arose between Gardner and the so-called executive committee of the state fair, which, it seems, was in charge of the concessions respecting the price for which Gardner should sell soda water. The committee's contention was communicated to the defendant, and he advised Gardner of the committee's contention, to which Gardner demurred, and told the defendant that he would not consent to the committee's request, and that he did not want the soda water concession under the terms imposed by the committee, and requested that his check be held by the defendant until the matter was adjusted. The defendant promised Gardner that he would "protect" him in the matter. Pending the controversy between the committee and Gardner, and on September 15, 1923, the defendant deposited the check in a bank to his own credit. He, however, contended that he did so pursuant to his promise to Gardner that he would "protect" the latter in his bid. It seems, however, that the matter was not finally adjusted between the committee and Gardner before the state fair

opened, and Gardner commenced to exercise his rights under the concessions. From the record it seems, however, that the matter remained in the condition outlined, and that no other disposition was made of the check by defendant, except that he deposited it as aforesaid, claiming, however, that he did so pursuant to his promise to ''protect'' Gardner. It was also made to appear that, although Gardner exercised his rights under his bid, he nevertheless requested that, in case the executive committee should stop or interfere with him in selling soda water at the prices charged by him, the defendant should ''protect'' him on his bid by withholding the check until the matter should be adjusted, so that, if he were interfered with by the committee, he might have some of the money represented by the check returned to him. Gardner, it seems, was not interfered with by the committee, and he exercised all of his rights to the end of the state fair. After the state fair had closed, the defendant did not account for the check, except as before stated, and hence the charge of embezzlement.

It is vigorously contended by the defendant that, under the circumstances just stated, the Utah State Fair Association did not become the legal owner of the check, and hence the charge in the information that it was the owner thereof was not established. *State* v. *Harcombe,* 48 Utah, 89, 158 Pac. 1096, is cited and relied on as supporting this contention. A mere cursory reading of that case will disclose, however, that the contention is not supported by what is there held. In that case the accused was charged with the embezzlement of money, the proceeds of certain checks, which, it was alleged, was the money of a certain law firm. The checks there in question were, however, made payable to the order of the creditors of the drawer of the checks. It was accordingly held that the proceeds of those checks did not belong to the law firm but were the property or money of the creditors or of the drawer of the checks. No other conclusion was permissible under the facts there disclosed. Here, however, the check was delivered to the defendant as the secretary and agent of the State Fair Association. He is charged with the embezzlement of the check and not with the embezzlement

of the proceeds thereof. He received the check, and could, only have received it, as the property of the Utah State Fair Association. True, in view of the circumstances, as will hereinafter appear, although he did not account for the check except as stated, he nevertheless, may have done what he did without a felonious intent, and hence may not be guilty of the crime of embezzlement. If that be so, however, it is not because the State Fair Association was not the owner of the check, but for the reasons hereinafter stated. This contention of the defendant must therefore fail.

It is, however, also insisted that the trial court committed prejudicial error in its instructions to the jury; in refusing some of the defendant's requests to instruct; and in the admission of certain evidence. Let it be remembered that the defendant is charged with the embezzlement of a certain check and with nothing else.

The court charged the jury as follows:

"You are instructed that the law presumes that every man intends the natural and probable consequences of his own acts, and, if you find from the evidence, beyond a reasonable doubt, that the defendant feloniously and fraudulently converted the property alleged in the information to have been embezzled to his own use, you will be authorized to infer therefrom a criminal intent, and that he did at the time intend to embezzle and convert the same to his own use, and to deprive the Utah State Fair Association of it. And in this connection you are instructed that 'feloniously' means a wrongful act willfully done."

It will be observed that the court charged "that the law presumes that every man intends the natural and probable consequences of his own acts," and that if the jury found the facts outlined in the instruction they might infer the necessary criminal intent to constitute the crime of embezzlement. It no doubt is the law that, ordinarily, the presumption prevails that men intend the "natural and probable consequences" of their acts, but it does not necessarily follow that one who is accused of the crime of embezzlement necessarily intended to commit a felony merely because he failed to account for the property which it is charged he has embezzled. In order to convict one of the crime of embezzlement the proof must go beyond the mere

fact of showing that the accused obtained the property of another in some fiduciary capacity, and that he failed to account for it on demand. While there may be cases where the felonious intent may be inferred from the circumstances surrounding the receipt and withholding of the property, nevertheless that cannot be so, where, as in this case, the accused claims the withholding of the property to have been in good faith and without a felonious intent. True it is that the reasons the accused may assign for having withheld the property may not be believed, but, if he claims as a defense that he withheld the property in good faith and upon some reasonable ground, then the necessary felonious intent cannot be inferred from the mere fact that he failed to account, but the jury must be instructed that the necessary felonious intent must be deduced from all the facts and circumstances when considered in connection with the claims of the accused respecting the failure to account for the property or the money. That such is the law is made quite clear by the authorities. See *McElroy* v. *People*, 202 Ill. 473, 66 N. E. 1058; *People* v. *Royce*, 106 Cal. 173, 37 Pac. 630, 39 Pac. 524; *People* v. *Lapique*, 120 Cal. 25, 52 Pac. 40; *Eatman* v. *State*, 48 Fla. 21, 37 South. 576; *State* v. *McDonald*, 133 N. C. 680, 45 S. E. 582. See, also *State* v. *Coyle*, 41 Utah, 320, 126 Pac. 305.

In *People* v. *Royce*, supra, the Supreme Court of California held that the mere fact that an officer or agent of an association deposits a check drawn in favor of the association and belonging to it to his own credit is not sufficient to constitute the crime of embezzlement, since the necessary felonious intent is not thereby established. That case is referred to only for the purpose of showing that the felonious intent necessary to constitute embezzlement cannot be inferred from the act of withholding the property.

In *People* v. *Lapique*, supra, it is held that, under a statute from which ours is copied, the claim that the property was withheld by the defendant for a specific reason, if made in good faith, may be sufficient to constitute a defense, although the reason may be made to appear to be untenable, as matter of law, in a civil action for conversion.

The question that there must be a felonious intent to constitute the crime of embezzlement is very ably and exhaustively considered in the case of *State* v. *McDonald,* supra.  It is there shown that the necessary felonious intent may not be inferred from the mere fact that the property was withheld from the owner by the one to whom it was entrusted or who received it in a fiduciary relation or capacity; that the criminal intent must be deduced from all the facts and circumstances, including the reasons of the accused for withholding the same.

To the same effect is the case of *McElroy* v. *People,* supra. In the latter case it is said:

"We are also of the opinion that the evidence failed to prove with that degree of certainty required by the rules of evidence in criminal cases that the defendant fraudulently converted to her own use, or took and secreted with intent so to do, without the consent of her employer, the money in question.  The only evidence of a criminal intent is the inference to be drawn from the act itself. She at no time denied or attempted to conceal the indebtedness."

So must it be said here.  The defendant at no time concealed or attempted to conceal the withholding of the check, and he, as we read the record, at all times claimed that he withheld it for the reason stated.

It is further contended by the defendant that the concluding sentence of the instruction hereinbefore set forth, which attempts to define the adverb "feloniously," namely, "and in this connection you are instructed that 'feloniously' means a wrongful act willfully done," constituted prejudicial error. In view of the facts and circumstances in this case, when considered in connection with defendant's claim of good faith in withholding the check, we think the contention is sound.  The definition of the adverb "feloniously" in the instruction is too restricted when, as here, the claim is advanced that the property was withheld in good faith and for specific reasons.  While in one sense the withholding may have been "wrongful" and "willfully done" so as to constitute conversion in a civil proceeding, yet a wrongful and willful act would not necessarily be felonious so as to constitute a felony. The court's charge would have been less harmful if it

had omitted the last sentence altogether.  By giving       3
the jury the definition of the adverb "feloniously,"
however, the court restricted its meeting within too narrow
bounds.

There are numerous judicial definitions of the terms "felo-
nious" and "feloniously" given in 3 Words and Phrases,
First Series, 2730.  We shall set forth one only of the defini-
tions here.  It is there said:

> "The word 'felonious' is defined by lexicographers as meaning
> 'malignant' or 'malicious'; and when an act is charged to have been
> done feloniously it certainly embraces the idea that it was done
> with a deliberate evil intent.  An act could not be felonious without
> being both malicious and unlawful.  *Aikman* v. *Commonwealth*
> (Ky.) 18 S. W. 937, 938."

See, also, 2 Words and Phrases, Second Series, 515, where
additional judicial definitions of the terms are given.

A mere cursory reading of the many judicial definitions
in Words and Phrases will also demonstrate that the terms
"felonious" and "feloniously," when found in indictments
or informations, must not be confounded with the use of the
same terms when used in instructions to a jury.  Those terms,
when used in indictments or informations which are always
addressed to lawyers and to judges, are well understood, and
thus need no further definition or explanation.  When
used in instructions to a jury of laymen, however, the       4
terms should be carefully defined or explained so that
an act which is merely unlawful or wrongful when considered
in a civil proceeding may not, by the jury, be deemed as con-
stituting a felony.

In view of the court's definition in this case, the jury may
have concluded that the defendant was guilty of a felonious
intent by merely withholding the check willfully and without
right; that is, wrongfully.  While to do that would have con-
stituted conversion, it, nevertheless, would not constitute the
crime of embezzlement.

In this connection it is also contended that the court erred
in refusing to charge the jury as requested by the defendant
as follows:

> "It is not sufficient to convict the defendant that he merely

cashed the check in question. It is necessary in order to convict him of the offense, and before you can bring in a verdict of guilty, you must find that he had a fraudulent intent to deprive the State Fair Association of this money, and, if you believe from the evidence that at the time he cashed the check he was holding the same, and that up until the time the fair was held he was simply holding the money pending an adjustment of the Gardner contracts, and was acting in good faith and without a fraudulent intent to deprive the state fair of the money, then you must bring in a verdict of not guilty."

While it is true that the court did attempt to cover the law reflected in the foregoing request in its general charge, yet it is also true that a mere cursory reading of the court's charge shows that in view of defendant's claim that he withheld the check in good faith for the reason stated the court's charge was too restricted in its terms. We are of the opinion that the defendant's request, or a charge in terms equivalent thereto, should have been given.

It is further contended that the court erred in admitting in evidence certain exhibits consisting of various contracts with which the defendant had no connection, and in admitting in evidence certain reports made by the Utah state auditor showing that the defendant was short in his accounts with the state. In view that the defendant was charged with the embezzlement of a check only, we are of the opinion that the defendant's contention in this regard should prevail.

While at least much of the evidence objected to might have been proper if the defendant had been charged with the embezzlement of money or funds in a separate count in the information, as he might have been, yet, when the charge was limited to the embezzlement of the check, then evidence respecting his failure to account for the money generally was improper.

That question was before the Supreme Court of Missouri in *State* v. *Dodson,* 72 Mo. 283, where Mr. Chief Justice Sherwood, in speaking for the court, said:

"As the indictment charged the embezzlement of the horses, any evidence respecting the embezzlement of the proceeds of the horses was clearly inadmissible, and any instructions based upon such evidence, erroneous. Judgment reversed and cause remanded."

That case is approved and followed in *State* v. *Crosswhite*, 130 Mo. 358, 32 S. W. 991, 51 Am. St. Rep. 571, where the indictment charged the embezzlement of potatoes, and evidence respecting their proceeds was admitted by the trial court. That case was also reversed for the reasons stated in the Dodson Case, supra.

The foregoing cases are cited only for the purpose of showing that where an accused is charged with the embezzlement of specific property he may not be convicted for the embezzlement of certain sums of money, although he may be short in his accounts. Where, as here, one is charged with the embezzlement of a particular check, evidence that he failed to account for the money he obtained for the check would, however, be proper evidence if it be limited for the purpose of showing that he had failed to account for the check as an entirety. If, however he is charged with the embezzlement of the check, evidence that he is short in his accounts, or that he has retained in his possession certain sums of money less than the amount of the check, is clearly inadmissible. The latter, however, is precisely what was done in this case. The state was permitted to introduce evidence to the effect that the defendant was short in his accounts, which shortage was much less than the amount of the check, and he was convicted for that shortage and not for the embezzlement of the check, although the jury returned a verdict of ''guilty as charged in the information.'' The verdict thus is not supported by the evidence, for the reason that the defendant was charged with having embezzled a check drawn for $480 when the auditor's reports which were admitted in evidence, showed a shortage of much less than that amount.

In this connection it is also proper to keep in mind that in embezzlement cases, as in some other cases, it may be proper for the state to prove that the accused has committed other similar offenses for the purpose of showing the necessary criminal intent. Evidence of a shortage in the accounts of the accused in a sum less than the amount of the check, which is the subject of the embezzlement

in question, is, however, not proper for that purpose. To permit that manifestly results in charging the accused with one offense and convicting him of another and different offense.

It is also insisted that the district court erred in admitting in evidence a certain statement made by the defendant to the Governor and others at the time he delivered his resignation to the Governor. The statement in question referred only to the discrepancy found in the "audit of the books of the state fair by the state auditor's office." It was thus not limited to the embezzlement of the check, and might well have been excluded. Statements of an accused against his interest, when relevant and voluntarily made, and when not too remote, are, however, generally admitted for the consideration of the jury, and if this were the only error complained of in this case we should not be inclined to reverse the judgment for that reason alone.

Without going further into detail, it must suffice to say that in view of the errors discussed the conviction of the defendant for embezzlement cannot be sustained. The judgment, therefore, should be, and it accordingly is, reversed.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.