**The STATE of Utah, Plaintiff and Respondent,**

v.

**Jerry A. BURNETT, Defendant and Appellant.**

**No. 19640.**

Supreme Court of Utah.

Dec. 24, 1985.

D. Gilbert Athay, Salt Lake City, for defendent and appellant.

David L. Wilkinson and, Sandra S. Sjogren, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Jerry Burnett appeals from a jury conviction on eight counts of theft based on eight checks he had written for personal expenses against the trust account of American Pension Services. Burnett argues that the trial court abused its discretion in denying both his motion for a judgment of acquittal at the close of the State's case and his motion for a mistrial because the offenses charged in the information were materially different from the offenses for which he was tried. Burnett

also contends that he should not have been convicted of a second degree felony on one of the theft counts. We find that both of Burnett's contentions have merit and reverse.

In the fall of 1982, Burnett began operating American Pension Services ("APS"), a sole proprietorship that offered self-directed individual retirement accounts to investors. In accordance with Internal Revenue Service rules, APS executed a master trust agreement governing the disposition of investors' funds. Under the agreement, investor funds were deposited into an interest-bearing trust account known as the "09" account. Investors were charged management fees by APS for its services. These fees were deposited into an account designated as the "08" account. All business expenses were paid from the 08 account; any funds remaining in the 08 account after payment of expenses were considered profits of APS.

In January, 1983, APS became a partnership. Curtis DeYoung, who had learned what he knew of the pension administration business from Burnett, became Burnett's partner. In March, DeYoung noticed that Burnett had made some substantial purchases of personal property and appeared to be prospering. DeYoung knew that there were insufficient funds in the 08 account to produce profits sufficient to cover the cost of Burnett's lifestyle. He became suspicious and began to review the APS accounts. A printout of the 09 trust account revealed several nondraft withdrawals. When DeYoung questioned Burnett about money missing from the 09 account, Burnett replied that there was "none that hasn't been put back." On April 1, 1983, the APS partnership was dissolved and Burnett transferred all accounts and records to DeYoung. Further investigation revealed that there had been a number of withdrawals from the 09 account and that it was substantially short of funds. In addition, a number of checks had been written on the account by Burnett for his personal purposes.

Burnett was charged by information with eight counts of theft from APS, each count supported by one check drawn against the 09 account and used by Burnett for personal purposes. Evidence at trial revealed that Burnett had written the eight checks to cover personal debts totalling $13,543 on the 09 account between January 5 and February 1, 1983, and that he had subsequently deposited $5,000 into the account. Burnett did not dispute writing the checks or using them for non-APS purposes. He maintained instead that he and APS were one and the same while he was operating APS as a sole proprietorship and that after January 31, 1983, he ran APS as a partnership with Curtis DeYoung. Burnett claimed that he was not culpable under either circumstance because it was legally impossible for him to exercise unauthorized control over either his own property or partnership property. He characterized the checks as loans that he intended to repay, although he admitted that he had not signed personal notes and had never pledged any security for the amounts taken from the 09 account. He freely acknowledged responsibility for whatever amounts he owed the account.

At the close of the State's case, Burnett's counsel moved for a judgment of acquittal. He argued that the State had failed to prove that Burnett had wrongfully appropriated property belonging to APS and that the case should be dismissed. The trial court denied the motion, stating that there was no significant difference between the offenses charged, theft from APS, and the offenses proved, theft of third-party funds controlled by APS. Following this ruling, defense counsel moved for a mistrial, contending that the variance between the offenses charged and the offenses proved was so substantial as to prejudice Burnett in the defense of his case. This motion, too, was denied. On appeal, Burnett renews the arguments about the variance between the offenses charged and those proved.

■ An information used to initiate a criminal prosecution in Utah serves a con-

stitutional function. Article I, section 12 of the Utah Constitution provides that every criminal defendant has a right to know "the nature and cause of the accusation against him. . . ." This entitles the accused to be charged with a specific crime, so that he can know the particulars of the alleged wrongful conduct and can adequately prepare his defense. *State v. Myers*, 5 Utah 2d 365, 371–72, 302 P.2d 276, 279–80 (1956); *State v. Taylor*, 14 Utah 2d 107, 108–09, 378 P.2d 352, 353 (1963); *cf. Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948).

Here, Burnett was specifically charged with eight counts of theft from APS. In order to prevail at trial, the prosecution had to prove these offenses substantially as charged. *State v. Taylor*, 14 Utah 2d at 109, 378 P.2d at 353; *see also State v. Harcombe*, 48 Utah 89, 94–97, 158 P. 1096, 1098–99 (1916). At trial, however, the prosecution's evidence showed that Burnett had stolen funds from a pool of unnamed third-party investors who had entrusted their money to APS, rather than from APS. There plainly was a variance between the specifics of the crime charged in the information and the crime of which the court permitted the jury to convict Burnett. The question is whether that variance requires reversal.

■ Utah Rule of Criminal Procedure 30(a) provides: "Any . . . variance [in the information] which does not affect the substantial rights of a party shall be disregarded." U.C.A., 1953, § 77–35–30(a) (1982 ed.). In this case, Burnett's entire defense rested on the theory that he could not be convicted of exercising unauthorized control over the property of APS because a sole proprietor is authorized to control his own property and a partner can control partnership property. Burnett's counsel was not on notice that the charge was theft from a pool of investors and his defense was not structured to meet that charge.

Because the variance clearly prejudiced him in the preparation and conduct of his defense on the merits, the conviction must be reversed.[1] *See State v. Myers*, 5 Utah 2d at 371–72, 302 P.2d at 279–80; *State v. Taylor*, 14 Utah 2d at 108–09, 378 P.2d at 353.

■ Burnett also challenges one of the counts of the indictment on the ground that there was insufficient evidence to support a second degree felony conviction. We agree. Theft is a second degree felony if the value of the stolen property exceeds $1,000 and a third degree felony if its value exceeds $250 but is not more than $1,000. U.C.A., 1953, §§ 76–6–412(1)(a)(i), (b)(i) (1978 ed.). In this case, count VI charged Burnett with a second degree felony, but was based on a check written by Burnett for exactly $1,000. This was plain error. Burnett could only have been convicted of a third degree felony on the basis of the $1,000 check.

The conviction is reversed.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

1. The reversal of Burnett's conviction does not preclude the State from prosecuting him on a charge that properly identifies the victims of the alleged theft and is, therefore, significantly different from the charge here. Although neither

party has briefed the issue, double jeopardy would be no bar to such a further prosecution. *See United States v. Ewell*, 383 U.S. 116, 124–25, 86 S.Ct. 773, 778, 15 L.Ed.2d 627 (1966).