2010 UT App 196

**STATE of Utah, Plaintiff and Appellee,**

v.

**Marcus Alexander GARCIA, Defendant and Appellant.**

No. 20081004–CA.

Court of Appeals of Utah.

July 15, 2010.

Troy L. Booher and J. Elizabeth Haws, Salt Lake City, for Appellant.

Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Defendant Marcus Alexander Garcia appeals his conviction for burglary, a second degree felony, *see* Utah Code Ann. § 76-6-202 (2008). We affirm.

## BACKGROUND

¶ 2 At approximately three o'clock in the morning on July 14, 2007, the victim was sleeping in her basement bedroom at her parents' home when she awoke to the sound of her bedroom door shutting. The victim,

who was more than eight months pregnant at the time, realized that there was an intruder in the room. When she inquired as to who was there, the intruder responded, "It's Marcus." The victim recognized the face of Defendant, who was her former neighbor.

¶ 3 Defendant then walked to the side of the victim's bed and said, "We are going to fuck." When the victim replied that she was pregnant, Defendant responded, "I don't give a fuck." The victim began to scream for her mother, and Defendant jumped on top of her, held her down, covered her mouth, and forced his fingers down her throat, cutting her lip. Defendant then put the victim's head into a pillow and pulled up her shirt. The victim attempted to defend herself by putting her fingers into Defendant's mouth, but Defendant bit her fingers.

¶ 4 The victim's parents, who had been sleeping on the upper floor of the home, were awakened by her screams. The victim's mother ran to the victim's bedroom door but found it locked. The victim's mother then heard her daughter scream, "Get him out of here," and heard the bedroom window break. At that point, the victim was able to get to the bedroom door and unlock it. The victim's father, who had not made it all the way downstairs at the point when he heard the bedroom window break, changed course and ran out the front door after Defendant. The victim's father was ultimately unable to capture Defendant, who got in his car and drove away. After leaving to look for Defendant, the victim's father returned home and found that the police had arrived on the scene.

¶ 5 Defendant was subsequently charged by information with attempted rape, a first degree felony, see id. §§ 76–4–101, 76–4–102, see also id. § 76–5–402; burglary, a second degree felony, see id. § 76–6–202; assault, a class A misdemeanor, see id. § 76–5–102; and criminal mischief, a class B misdemeanor, see id. § 76–6–106. The burglary charge, which was read to Defendant during his initial appearance, stated, "[D]efendant ... entered or remained unlawfully in the dwelling of [the victim] with the intent to commit *an assault or a felony*, to-wit: attempted rape." (Emphasis added.) After a preliminary hearing on the matter, Defendant was bound over on all four charges.

¶ 6 The case proceeded to trial. During opening statements, counsel for Defendant characterized the felony underlying the burglary charge as follows: "We have burglary, *based on a felony or assault*, in particular the attempted rape." (Emphasis added.) During the State's case-in-chief, the State argued a theory of burglary based on Defendant's unlawful entry into the victim's home to commit a rape. During the defense's case-in-chief, Defendant testified that he actually entered the victim's home to collect a debt from the victim's brother, who owed Defendant money for a quarter pound of marijuana Defendant had recently sold to him. Defendant further testified that he became frightened while in the home and entered a bedroom and locked the door to give himself time to leave the home. Defendant also testified that once in the bedroom, he was surprised to find the victim sleeping and that before he could explain, the victim started screaming. Defendant testified that he attempted to keep the victim quiet by putting his hand over her mouth and pushing her head down on the pillow. Defendant denied that he bit or attempted to rape the victim. Finally, Defendant testified that when the victim's mother tried to get in the bedroom, he broke the window to facilitate his escape.

¶ 7 In direct rebuttal to Defendant's testimony that he had entered the victim's home to collect money from a drug deal with her brother, the State recalled Detective Gregory Gray to the stand. Over Defendant's repeated objections, Detective Gray testified that it is illegal to sell marijuana and that a person selling a quarter pound of it would be charged with a third degree felony.

¶ 8 Before the parties presented closing arguments in the case, the trial court read the jury instructions to the jury. With regard to the burglary charge, Instruction No. 21 specifically instructed the jury that it could convict Defendant if it found that "[D]efendant entered or remained [in the victim's home] with the intent to commit a rape, an attempted rape, *or an assault*." (Emphasis added.) Defendant did not object to the jury instruction.

¶ 9 During closing arguments, the State again advanced its theory of burglary—that

Defendant had entered the home with the intent to rape the victim. The State also mentioned, however, that Defendant's attempt to collect a debt on a felony drug transaction would provide a separate basis for a burglary conviction. At the close of the trial, Defendant moved for a directed verdict on all four charges. Outside the presence of the jury, the State opposed the motion, arguing that as to the burglary charge, proof of the underlying felony was supported by evidence of intent to assault. Specifically, the State argued, "[W]ith regard to the burglary, again, I think we have the assault and even the Defendant indicating that he covered her mouth and was holding her down because he was scared, he didn't want to be caught." Defendant made no objection to the State's argument, and the trial court denied the motion.

¶ 10 Subsequently, the jury acquitted Defendant of the attempted rape but convicted him of burglary, assault, and criminal mischief. The trial court sentenced Defendant to one to fifteen years on the burglary conviction, 365 days on the assault conviction, and 180 days on the criminal mischief conviction. Defendant now appeals the burglary conviction.

## ISSUES AND STANDARD OF REVIEW

¶ 11 Defendant contends that the assault conviction cannot support the burglary

conviction for two reasons. First, Defendant argues that any assault occurred while he was fleeing the premises and, thus, he did not form the requisite intent to commit the assault while he "entered or remained" in the home as required by the burglary statute. "A matter of statutory interpretation [is] a question of law that we review on appeal for correctness." *MacFarlane v. Utah State Tax Comm'n*, 2006 UT 25, ¶ 9, 134 P.3d 1116 (alteration in original).[1] Second, Defendant argues that because the State represented in its information as well as during its case-in-chief that the attempted rape was the underlying felony supporting the burglary charge, any subsequent change in the State's theory at trial denies Defendant his constitutional right to confront the charges against him. "[C]onstitutional questions . . . are questions of law and therefore reviewed for correctness," without deference to the trial court's ruling. *State v. Arviso*, 1999 UT App 381, ¶ 5 n. 4, 993 P.2d 894 (omission in original) (internal quotation marks omitted).[2]

## ANALYSIS

I. The Evidence Supports a Finding that Defendant Formed the Intent to Assault the Victim While He Remained Unlawfully in Her Home, Not While He Was Fleeing.

¶ 12 Defendant argues that "[u]nder the plain language of Utah's burglary statute and

1. Defendant also claims that because the jury acquitted him of attempted rape, the jury necessarily rejected the State's evidence that Defendant entered the home with intent to rape the victim. Absent intent to rape, Defendant reasons, there is no evidence that Defendant "entered or remained" in the home with the intent to assault. This argument is unavailing. That the jury acquitted Defendant of attempted rape does not necessarily mean that the jury did not believe Defendant entered the home with the requisite intent to rape the victim. Indeed, Defendant clearly announced his intentions upon entering the victim's bedroom when he stated, "We are going to fuck." Rather, in acquitting Defendant of the attempted rape charge, it is likely that the jury simply did not believe that Defendant took a substantial step toward the commission of the rape. In any event, proof of burglary does not require proof that the underlying felony was actually committed. *See* Utah Code Ann. § 76–6–202(1) (2008) (requiring the "intent to commit" one of the enumerated crimes). Instead, it requires only that Defendant

formed the intent to commit the offense at the time he entered or remained in the home.

2. Defendant also contends that the trial court exceeded its discretion because it allowed Detective Gray to improperly testify to a legal conclusion, i.e., that an individual selling a quarter pound of marijuana would be charged with a third degree felony. We conclude that even if the trial court erred in allowing Detective Gray to so testify, any error is ultimately harmless. First, the "felony" in the information and Instruction No. 21 referred to the attempted rape. Second, contrary to Defendant's contention otherwise, Defendant's conviction for assault also independently supports his burglary conviction. Therefore, although Defendant is correct that "Detective Gray's testimony was the only basis upon which the jury could have concluded that the drug transaction was a felony [that] could support a burglary conviction," there were other crimes that also supported the burglary charge.

given its common law history, an assault [that is committed] while a defendant flees a building cannot form the basis for a burglary conviction." More specifically, Defendant contends that because he did not "enter or remain" in the victim's residence to commit an assault but, rather, formed his intent as he fled, the State failed to establish a necessary element for the burglary charge. For the following reasons, we disagree.

¶ 13 Utah's burglary statute provides that "[a]n actor is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit: (a) a felony; (b) theft; [or] (c) an assault on any person...." Utah Code Ann. § 76–6–202(1) (2008). Thus, the plain language of the statute requires that the actor's intent be formed at the time of entry or at any time while the actor remains unlawfully in the building or dwelling. Moreover, in interpreting this statute, the Utah Supreme Court has concluded that "a person is guilty of burglary under [Utah Code] section 76–6–202(1) if he forms the intent to commit a felony, theft, or assault at the time he unlawfully enters a building or *at any time thereafter while he continues to remain there unlawfully.*" *State v. Rudolph,* 970 P.2d 1221, 1229 (Utah 1998) (emphasis added). Based on the evidence, the jury could have reasonably found that Defendant formed the intent to assault the victim while he remained unlawfully in the victim's home. When the victim screamed for help, Defendant jumped on top of her, held her down, covered her mouth, and forced his fingers down her throat. Defendant also forced the victim's head into her pillow and raised her shirt, which he admitted that he did, although alleging that it was in an effort to keep the victim quiet. Only when Defendant heard the victim's mother approaching the bedroom did he get off of the victim and break the bedroom window in an attempt to flee the premises. The jury could have reasonably found that it was only at that point that the assault ended and his attempt to flee began. Under the circumstances, Defendant formed the requisite intent to assault the victim while he remained unlawfully in her home, bringing him squarely within the plain language of the burglary statute, *see id.* There-

fore, Defendant's argument that the State did not establish a necessary element of the burglary charge fails.

## II. Defendant Had Sufficient Notice that the Assault Charge Could Serve as the Underlying Offense for the Burglary Charge.

¶ 14 Defendant also argues that because the State represented during its case-in-chief that attempted rape was the underlying felony supporting the burglary charge, any subsequent argument that assault could *also* form the basis for the burglary charge improperly allowed the State to "reinvent its charge" against Defendant, thus denying him his constitutional right to confront the charges against him. We disagree.

> Article I, section 12 of the Utah Constitution provides that every criminal defendant has a right to know the nature and cause of the accusation against him.... This entitles the accused to be charged with a specific crime, so that he can know the particulars of the alleged wrongful conduct and can adequately prepare his defense.

*State v. Burnett,* 712 P.2d 260, 262 (Utah 1985) (omission in original) (internal quotation marks omitted). However, "[a]s long as a defendant is sufficiently apprised of the State's evidence upon which the charge is based so that the defendant can prepare to meet that case, the constitutional requirement is fulfilled." *State v. Wilcox,* 808 P.2d 1028, 1032 n. 1 (Utah 1991).

¶ 15 We conclude that Defendant had constitutionally sufficient notice that the State could prosecute the burglary charge based on the theory that Defendant remained unlawfully in the victim's home to commit an assault against her. First, Defendant was independently charged with assault. Second, as to the burglary charge, the information specifically stated, "[D]efendant ... entered or remained unlawfully in the dwelling of [the victim] with the intent to commit *an assault* or a felony, to-wit: attempted rape." (Emphasis added.) Finally, Instruction No. 21, to which Defendant never objected, explicitly informed the jury that it could base a conviction for burglary on either the intent to

commit an assault or the intent to commit rape. Given these circumstances, we cannot say that Defendant did not have constitutionally sufficient notice that assault could provide the basis for the burglary charge against him.

## CONCLUSION

¶ 16 In sum, there is ample evidence that Defendant formed the requisite intent to assault the victim while he remained unlawfully in her home, thus bringing him squarely within the plain language of the burglary statute. Furthermore, we conclude that Defendant had constitutionally sufficient notice that the assault could form the underlying basis for the burglary charge against him. Affirmed.

ORME, Judge (concurring in the result):

¶ 17 I reject Defendant's basic premise that because he was acquitted of attempted rape, his intent to rape the victim, when he entered or remained in the residence, could not support the burglary conviction. Just the opposite is true.

¶ 18 An attempt is committed when a defendant, intending to commit a particular crime, takes a substantial step toward its completion. *See* Utah Code Ann. § 76-4-101(1) (2008). All that is required for burglary, however, is that a defendant enter or remain in a building *intending* to commit a crime of the statutorily enumerated sort—there is no requirement that a substantial step be taken to that end in order to sustain a burglary conviction. *See id.* § 76-6-202. Thus, a jury can properly convict a defendant of burglary when that defendant enters a building intending to commit a theft but, once inside, wholly fails in his mission. *See,*

*e.g., State v. Sisneros,* 631 P.2d 856, 857–59 (Utah 1981) (affirming a burglary conviction when the defendant unlawfully entered a building and noting "[t]he fact that nothing was missing when defendant was apprehended is no defense to the burglary charge[,] nor does it destroy the inference of intent to steal at the time of entry") (footnotes omitted).

¶ 19 This appeal readily turns on the realization that there is no disconnect between the jury's concluding that Defendant entered, or at least lingered, in the residence, intending to rape the victim—thus sustaining his burglary conviction—while at the same time concluding he did not take a substantial step toward actual commission of the crime of rape—thus necessitating his acquittal on the charge of attempted rape.[1] As the lead opinion seems to recognize in its footnote 1, the jury's verdict is completely logical, given the evidence before it, and readily supports a burglary conviction. On this straightforward basis, alone, I would affirm. I see no need to wrestle with the more convoluted issues dealt with at length in the body of the lead opinion.

McHUGH, Associate Presiding Judge (concurring):

¶ 20 Because I conclude that the lead opinion and Judge Orme's concurring opinion both provide justification for affirming Defendant's conviction, I concur with both opinions.

---

1. The words Defendant spoke were sufficient evidence of his intention to rape the victim, but the jury could easily have concluded that his actions in struggling with the victim were with the purpose of quieting her and facilitating his escape rather than to implement his quickly abandoned intention to rape her and, thus, did not amount to a substantial step toward commission of the crime of rape.