## STATE v. PAULSON.

Evidence **held** insufficient to convict a deputy county treasurer of embezzling county funds.

Even where examinations and computations based on records may be shown by testimony, the records themselves must be offered in connection therewith.

An information charging that a deputy county treasurer, while in control of funds, including a specified fund of stated amount, embezzled said sum, limits proof to embezzlement of that particular fund, not permitting proof of embezzlement of an equal amount of county funds.

Proof that a county treasurer's records showed that a fund collected was not credited to the county, though competent evidence against a deputy charged with embezzling the fund, is overcome by a showing that the county received credit on the books of the depositary.

(Opinion filed January 25, 1911.)

Appeal from Circuit Court, Day County. Hon. FRANK McNULTY, Judge.

A. G. Paulson was convicted of embezzlement, and he appeals. Reversed.

*Sears & Potters,* for appellant. *S. W. Clark, Atty. Gen., Cloyd D. Sterling, Asst. Atty. Gen.,* and *Frank Anderson, State's Atty.,* for the State.

SMITH, P. J. At the January, 1910, term of the circuit court of Day county, the defendant was tried and convicted of embezzlement and sentenced to the penitentiary at Sioux Falls for a term of one year. From this judgment and an order overruling a motion for a new trial, defendant appeals.

The information filed by the state's attorney, among other things, in substance alleges: That from the 20th day of April, 1907, to the 6th day of January, 1909, the defendant was the duly appointed, qualified, and acting deputy county treasurer of Day county. That on the 5th day of January, 1909, and while such deputy treasurer, and while having in his possession by virtue of said office large sums of money belonging to said county, among which sums of money was the sum of $558.21, the same being the amount apportioned and paid to the county treasurer's office of said Day county, for and on account of said county's part of the state telephone and telegraph tax for the year 1907, the defendant willfully, unlawfully, fraudulently, and feloniously, and with a fraudulent intent to appropriate for his own use, did receive, take, secrete, fail to account for, and embezzle said $558.21, which said money or sum taken and secreted and not accounted for was converted to his own use. The assignments of error present two questions: First, the insufficiency of the evidence to justify the verdict; and, second, errors of law in the admission of evidence and in denying the motion for a new trial, and in refusing to advise the jury to acquit. The insufficiency of the evidence and the alleged error of the court in refusing to advise the jury to acquit present substantially the same question and may be considered together.

On the trial, the state offered in evidence certain exhibits numbered from 1 to 11, inclusive.

Exhibit 1 shows as follows: "Pierre, South Dakota, Nov. 16, 1908. The State of South Dakota, Dr., to Day County. To Telephone Tax 1907. Apportionment—1908. $435.72. Received of the State Auditor warrant No. 1,755 for $435.72 in full payment of the within account. L. L. Butler, Treasurer of Day Co., S. D., by A. G. Paulson, Deputy."

Exhibit 4: "No. 1,755. State of South Dakota, Auditor's Office, Nov. 16, 1908. Treasurer of South Dakota, Pierre: Pay to the order of Treasurer Day Co. four hundred thirty-five and 72-100 dollars, from the Apportionment 1907 Telephone Tax Fund. $435.72. John Hirning, Auditor, by H. Hedger, Deputy."

On the back thereof appeared the following: "L. L. Butler, County Treasurer, by A. G. Paulson, Deputy."

Exhibit 2 shows as follows: "Pierre, South Dakota, Nov. 16, 1908. The State of South Dakota, Dr., to Day County. To Telegraph Tax 1907. Apportionment—1908. $122.49. Received of State Auditor warrant No. 1,704, for $122.49, in full payment of the within account. L. L. Butler, Treasurer of Day Co., S. D., by A. G. Paulson, Deputy. No. 16, 1908. $122.49."

Exhibit 3: "No. 1,704. State of South Dakota, Auditor's Office. Pierre, Nov. 16, 1908. Treasurer of South Dakota: Pay to the order of treasurer of Day Co. one hundred twenty-two and 49-100 dollars from the Apportionment 1907 Telegraph Tax Fund. John Hirning, Auditor." Upon the face thereof appeared the following stamp: "C. H. Cassill. Redeemed Nov. 24, 1908. State Treasurer." Upon the back thereof appeared the following: "L. L. Butler, County Treasurer, by A. G. Paulson, Deputy."

Exhibit 5 is as follows: "Treasury Department, State of South Dakota. No. 1,363. Pierre, So. Dak., Nov. 24, 1908. Pay to the order of Treasurer Day Co., Webster, S. D., five hundred fifty-eight 21-100 dollars $558.21. Sioux Falls Saving Bank, Sioux Falls, South Dakota. C. H. Cassill, Treasurer of South Dakota. Ezra Issenhuth, Deputy."

These exhibits were identified by the proper officers.

A. T. Cooper, sworn in behalf of the state, testified: "I am cashier of the Farmers & Merchants' National Bank. Exhibit 5 passed through that bank. It was deposited to the credit of L. L. Butler, county treasurer of Day county, and was entered on our books January 2, 1909. This check was duly paid. It was the check drawn by the treasurer of South Dakota, and L. L. Butler, county treasurer of Day county, got full credit for this $558.21 on the books of the Farmers & Merchants' National Bank. This was deposited to his credit." The indorsements on Exhibits 3 and 4 were shown to be in the handwriting of the defendant.

J. L. Wingfield swore on behalf of the state: "I am deputy public examiner. I made an examination of the county treasurer's office of Day county from the 27th to the 31st of August.

Checked over the books from the 9th of January, 1907, to January 6, 1909. Listed all the receipts for cash received and added them. Listed all the disbursements of cash and added those, and, from the total of the cash balance on hand and the total of the cash received, I deducted the disbursements—deducted the total of the amounts paid out from the total of the receipts. There was not among the receipts shown by the record of the county treasurer's office of Day county any receipt or credit to the county on account of the sum of $558.21 telephone and telegraph tax for the year 1907, nor was there any entry crediting the county with the receipt of the sum of $558.21. I can tell by reference to these records how much money there was turned over to the successor of L. L. Butler as county treasurer on the 6th day of January, 1909. Q. Refer to the book and state to the jury what that was? (This question was objected to as incompetent, immaterial, and irrelevant and not binding upon the defendant, not tending to prove any of the issues in the case. Ruling and exception.) A. The amount turned over to Mr. Wayland, the successor of Mr. Butler, on the 6th day of January, 1909, was $49,896.46, according to the books. Q. Was there in this balance included the amount of $558.21 telephone and telegraph tax apportioned to Day county? (Objected to on the same ground as the preceding question. Ruling and exception.) (A. No, sir." Witness was then asked the following question: "Did you find in the office of the county auditor of Day county in the record pertaining to the receipts of Day county for the period from the 9th day of January, 1907, to the 6th day of January, 1909, any item for telephone or telegraph tax apportioned to this county?" Same objection and ruling. "A. No, sir. Q. Did you find in those records any item of $558.21, being telephone and telegraph tax apportioned by the state to this county?" Same objection, ruling, and exception. Witness answered: "No, sir." He was then asked the question: "Did you observe in the record of this county any item of $558.21 which was not included in the receipts? (Objected to as incompetent, immaterial, irrelevant, and not the best evidence. Overruled and exception.) A. Yes, sir; I found

that entry on page 83 of the Treasurer's Ledger K, which I now hold in my hand." Witness was then asked the following question: "Is that $558.21 included in the balance and extended to the right of the entry? (Same objection, ruling, and exception.) A. It is not. The item of $12,315.46 is the true balance; but, if the sum of $558.21 is included in the column, then it is not the true balance. Q. Did you observe any record or writing in the office of the county treasurer, referring to the sum of $558.21 telephone and telegraph tax? (Objected to as incompetent, immaterial, irrelevant, and not tending to prove any of the issues in the case. Overruled. Exception.) A. Yes."

We are not prepared to hold, and do not hold, that the questions asked the witness Wingfield relating to items actually shown by the county records, as distinguished from matters involving extended examinations and the results of computations or to prove the absence of specific items therefrom were competent. But, even in cases where examinations and computations may be shown, the rules of evidence require the records themselves to be offered in connection therewith. If we understand the proceedings in the case before us, the records themselves do not appear to have been offered. From the evidence which is undisputed, and admitted to be true by the respondent, it appears that on the 2d day of January, 1909, appellant, as deputy county treasurer of Day county, deposited in the Farmers' & Merchants' National Bank the sum of $8,927.23, and that this deposit included the check, Exhibit No. 5, for $558.21, issued by the state treasurer to cover the aggregate amount of the telephone and telegraph tax apportioned to Day county. Exhibit 10 offered in evidence by the state is a financial statement of the treasurer's office at the close of business, January 5, 1909. This statement certified to by the defendant, Paulson, on the 6th day of January, 1909, shows a total amount of $49,896.46 then in the hands of the county treasurer. Exhibit 11 is the receipt of H. W. Wayland, the incoming county treasurer, acknowledging the receipt of $49,896.46 from L. L. Butler, the outgoing county treasurer. As shown by the financial statement above referred to, the aggregate amount turned

over to the incoming treasurer was made up of a certificate of
deposit in the Farmers' & Merchants' National Bank for $49,-
250.35, together with items · $55.97 cash in the office; insane
account, $437.80; Cillins certificate, $152.34. A careful examina-
tion of the entire evidence fails to show that there was any
shortage in the aggregate amount of moneys turned over by L. L.
Butler, the outgoing county treasurer. Precisely the same figures
are given by Public Examiner Wingfield in his testimony as the
amount turned over by Butler to Wayland on the 6th day of
January, 1909, as shown by the record of the county treasurer's
office. The financial statement, Exhibit 10, discloses that, with
the exception of the insane account, $437.80, and the Cillins cer-
tificate, $150.34, the entire amount of moneys belonging to the
county and in the hands of the county treasurer was then on
deposit in the Farmers' & Merchants' National Bank. The evi-
dence of A. T. Cooper, cashier of that bank, shows conclusively
that on the 2d day of January, 1909, only three days before this
financial statement was made, the check of the state treasurer,
Exhibit 5, for $558.21 in payment of this telephone and telegraph
tax belonging to Day county, was actually deposited to the credit
of the county treasurer and became a part of the funds in that
bank belonging to the county treasurer's office. Neither does the
evidence anywhere disclose that the accused, Paulson, between the
2d and 6th days of January, withdrew from the bank a single
dollar of money thus on deposit. Nor does the evidence any-
where disclose that the public examiner checked up the amount
of deposits in said bank by an examination of the bank's record,
or that he had any knowledge whatever of the amount of county
moneys actually on deposit in said bank, on the 5th day of
January, 1909.

It is contended by counsel for respondent that the words in
the information, "the same being the amount apportioned and paid
to the county treasurer's office of said Day county for and on ac-
count of said county's part of the state telephone and telegraph
tax for the year 1907," may be construed as surplusage, and that
the information should be held to charge an embezzlement of "an

amount" of county funds equal to the telephone and telegraph tax, namely, $558.21. The whole. paragraph of the information read together, however, makes it clear that this construction of the information is inadmissible, and does not express the thought in the mind of the pleader. The whole paragraph reads, "and while having in his possession and under his control by virtue thereof large sums of money belonging to said county, among which sums of money was the sum of $558.21, the same being the amount apportioned and paid to the county treasurer's office of said Day county for and on account of said county's part of the state telephone and telegraph tax for the year 1907." The purpose of the language seems to be clear—to charge the accused with having "in his possession and under his control large sums of money belonging to said county" among which sums were specific funds, viz., the telephone and telegraph funds, which funds are charged to have been embezzled. It follows that, unless the evidence is sufficient to show a misappropriation of these specific funds, a conviction cannot be sustained under this information. It is true that the witness Wingfield testified, in effect, that the books kept by the accused in the treasurer's office showed that the amount of this telephone and telegraph tax had not been there credited to the county, and that fact, if properly shown, would be competent evidence against the accused, and, taken together with the admissions of the accused and other acts shown by the evidence, might be sufficient to sustain a conviction for embezzlement of this particular fund. But, when the state conceded that the county actually received credit for this identical money in the books of the bank, the probative force of all this other evidence is utterly destroyed. There could not have been an embezzlement of this money if the accused in fact turned it into the bank and did not thereafter withdraw and appropriate it to his own use, and it is not shown that he ever withdrew a dollar of it from the bank. Exhibit 11, put in evidence by the state, shows that on January 6th the incoming treasurer received from Butler, the outgoing treasurer, the sum of $49,896.46 in full settlement of all moneys belonging to the county, and therefore there

was no shortage in the funds in Butler's hands as county treasurer. The evidence does show that on December 29, 1908, Butler himself made a deposit in the Farmers' & Merchants' National Bank of $1,500, to the credit of the county, to make good a shortage in the moneys belonging to the county; but it appears by Butler's own evidence that this deposit was made to cover certain moneys which he himself had taken out of the county funds and used in his own private business. And it is not shown that there was any other shortage in the funds actually on deposit in the bank to the credit of the county on January 9, 1909, when they were turned over to the incoming treasurer.

Upon this record we have no hesitation whatever in holding that the evidence is wholly insufficient to sustain a conviction, and that the order and judgment of the trial court must be reversed, and it is so ordered.

McCOY, J, took no part in this decision.