THE STATE v. ALEXANDER

(138 S. E., 835)

1. EMBEZZLEMENT—EVIDENCE HELD NOT AT FATAL VARIANCE WITH INDICTMENT CHARGING EMBEZZLEMENT BY COUNTY TREASURER, OR INSUFFICIENT TO SUSTAIN CONVICTION (CR. CODE 1922, § 459; CIV. CODE 1922, § 533; CODE CR. PROC., § 89).—Where indictment charged that defendant unlawfully committed embezzlement, in that while County Treasurer intrusted with care, keeping, and possession of money, property of county, he did unlawfully and falsely swear to a false claim against the county when he well knew that the county had paid him the amount of such claim, and that by virtue of such false claim the county issued to defendant a check for amount of claim, which amount was charged against and paid out by the county, and that defendant did unlawfully embezzle such money with intent to cheat and defraud the county, *held*, evidence showing that defendant had received a check from the county in

NOTE: As to manner and form of charging offense in indictment for embezzlement, see 9 R. C. L., 1287; 2 R. L. C. Supp., 960; 5 R. C. L. Supp., 537.

Conversion as essential to conviction of public officer for embezzlement, see 9 R. C. L., 1286; 2 R. C. L. Supp., 960; 4 R. C. L. Supp., 648.

payment of a false claim for an amount already paid, and that he presented check to County Auditor (Civ. Code 1922, § 533), and was allowed credit therefor, was not at fatal variance with indictment nor insufficient to sustain conviction, under Cr. Code 1922, § 459, in view of Code Cr. Proc., § 89.

2. COURTS—INDICTMENT AND INFORMATION—LOCAL STATUTES AND DECISIONS SHOULD CONTROL COURT IN MATTER OF DISREGARDING SURPLUSAGE IN INDICTMENT.—In matter of disregarding surplusage in indictment, Court should be guided by local statutes and decisions.

3. EMBEZZLEMENT—STATE MUST ESTABLISH CONVERSION BY DEFENDANT EITHER ACTUAL OR CONSTRUCTIVE (CR. CODE 1922, § 459).—In prosecution under Cr. Code 1922, § 459, for embezzlement, State is required to establish conversion on part of defendant, though it may be either actual or constructive.

4. EMBEZZLEMENT—FRAUDULENT CONVERSION ESSENTIAL TO EMBEZZLEMENT MAY BE ACCOMPLISHED BY ANY EXERCISE OF RIGHT OF OWNERSHIP INCONSISTENT WITH OWNER'S RIGHTS OR NATURE OF TRUST (CR. CODE 1922, § 459).—Fraudulent conversion essential to offense of embezzlement, under Cr. Code 1922, § 459, may be effected by any exercise of the right of ownership inconsistent with the owner's rights and with the nature and purpose of a trust.

5. INDICTMENT AND INFORMATION—TIME IS NOT ELEMENT OF OFFENSE OF EMBEZZLEMENT (CR. CODE 1922, § 459).—Under Cr. Code 1922, § 459, time is not an element of the offense of embezzlement; hence State may prove offense alleged generally, at any time prior to finding of indictment.

6. WITNESSES—ADMITTING EVIDENCE THAT ACCOUNTANT TESTIFYING FOR EMBEZZLING COUNTY TREASURER WAS DRUNK DURING EXAMINATION OF DEFENDANT'S BOOKS HELD NOT ERROR, AS CONTRADICTING WITNESS ON COLLATERAL MATTER (CR. CODE 1922, § 459).—In prosecution under Cr. Code 1922, § 459, for embezzlement by County Treasurer, admission of evidence that accountant who testified for defendant had been drunk during his examination of books of county, and during same period had been arrested by peace officers for being drunk and disorderly, and had put up a bond which he forfeited, *held* not error, as contradicting witness on a collateral matter.

7. CRIMINAL LAW—IN PROSECUTION FOR EMBEZZLEMENT BY COUNTY TREASURER, REQUESTED CHARGE ON WEIGHT TO BE GIVEN ANNUAL SETTLEMENTS BY DEFENDANT HELD PROPERLY DENIED, AS CHARGE ON FACTS (CR. CODE 1922, § 459).—In prosecution under Cr. Code 1922, § 459, for embezzlement by County Treasurer, requested instruction that accounts of public officer made up and adjusted or settled by proper officers were usually treated at least as *prima*

*facie* evidence of officer's financial obligation to government, and
that a full and complete annual settlement of defendant with
proper officers, if made, should be final and conclusive, unless there
was fraud or mistake or imposition in making such settlement,
and that jury in reaching its conclusion might consider annual
settlements made by defendant for whatever they were worth,
*held* properly denied, as charge on facts.

8. CRIMINAL LAW—CHARGE NEED NOT BE GIVEN IN EXACT LANGUAGE
OF REQUEST.—It is not incumbent on trial Judge to charge any re-
quest in exact language contained therein, even though it states a
sound principle of law applicable to the case.

Before BONHAM, J., Oconee, March, 1926.    Affirmed.

R. H. Alexander was convicted of embezzlement, and he
appeals.

*Messrs. Shelor & Hughes, J. P. Carey, Jr.,* and *Dean,
Cothran & Wyche,* for appellant, cite: *Variance between
the charge and proof is fatal:* 5 S. C., 29; 83 S. C., 309;
144 S. W., 271; 129 N. W., 558; 116 Pac., 679; 106 S. W.,
513; 67 So., 723; 113 Pac., 879; 110 N. E., 9; 151 N. W.,
640; 54 So., 722; 106 S. W., 513; 164 S. W., 492; 140
Pac., 1108; 158 Pac., 1096; 74 S. C., 729; 75 So., 178; Id.,
185; 166 N. W., 970; 204 N. W., 441; 225 S. W., 382; 176
Pac., 476; 220 Pac., 378; 253 S. W., 1019; 106 S. E., 11.
*Test of whether evidence collateral:* 130 S. C., 252; 33 S.
C., 582; 89 S. C., 151. *When evidence competent to im-
peach witness:* 33 S. C., 593; 30 S. E., 395; 151 N. E.,
653; 281 S. W., 819; 42 So., 1014; 51 So., 722; 58 So., 80;
86 S. E., 742; 193 Ill. App., 451; 74 Atl., 593; 101 S. W.,
231; 297 Fed., 82; 100 So., 202; 262 S. W., 411; 260 S. W.,
846; 213 Pac., 590. *Settlements by county officers:* 22 R.
C. L., 467, Par., 135; 166 U. S., 511; 41 L. Ed., 1119; 97
S. W., 236; 113 A. S. R., 779.

*Mr. M. C. Long,* for respondent, cites: *Admissibility of
evidence of intoxication to discredit witness' testimony:*
Wig. on Ev., 1005; Jones on Ev., 1050. *Different offenses
may be charged in the same indictment:* 49 S. C., 484; 10

S. C., 191; 15 S. C., 434; 38 S. C., 353; 100 S. C., 331. *Cases distinguished:* 5 S. C., 65; 83 S. C., 309, 313.

*Messrs. L. W. Harris* and *M. C. Long,* also for respondent, cite: *The relevancy of testimony is in discretion of trial Judge:* 135 S. E., 567.

June 29, 1927.

The opinion of the Court was delivered by Mr. Justice . Blease.

The grand jury of Oconee County returned an indictment against the defendant which charged him, in three separate counts, with the crimes of embezzlement, breach of trust with fraudulent intention, and grand larceny. Each count dealt with the misappropriation of the same sum of money. The alleged crimes grew out of the conduct of the defendant as country treasurer. In addition to the indictment in this case, it appears that three other indictments are pending against the defendant for other alleged defalcations of public funds while county treasurer.

When called for trial in the case at bar, in the Court of General Sessions for Oconee County, the defendant moved that he be tried in one trial on all the indictments pending against him, but the trial Judge, Hon. M. L. Bonham, refused this motion. The defendant demurred to the second and third counts of the indictment; the demurrer being overruled. There was no demurrer to the first count. The solicitor withdrew the third count, which charged grand larceny. Having entered a plea of not guilty, the defendant was put to trial on the two counts that charged embezzlement and breach of trust. He was found guilty of embezzlement, and was thereupon sentenced to serve not less than five years and not more than ten years and to pay a fine of $1,000. From said conviction and sentence he has appealed.

The first exception complains that the trial Judge erred in not granting the defendant's motion for a directed verdict in his favor on the embezzlement

charge. The fourth exception charges error in the refusal to grant a motion for a new trial. The specifications of error set up in the exceptions are the same; so both will be disposed of together. They are as follows:

"(a) The testimony offered by the state failed to show that there had been any embezzlement of public funds by the defendant. (b) There is a fatal variance between the allegations of the indictment and the proof as offered, in that the indictment alleges that there was issued to the defendant, by the clerk of the county board and the supervisor of the county, a county check for $10,235.53, which said check was received by the defendant, was cashed by him, and the proceeds appropriated to his own use; whereas, the proof shows that said county check was issued to the defendant upon recommendation of the grand jury of Oconee County, for the purpose of straightening his books, and that said check was never cashed by the defendant or by any one else nor were any proceeds from said check ever received or appropriated to the use of the defendant by him or by any one for his benefit. (c) The testimony fails to establish that the defendant was ever intrusted with $10,235.33, the proceeds of the check set out in the indictment, but, on the contrary, establishes affirmatively that the defendant was never intrusted with this specific fund."

In order to clearly understand the questions raised by exceptions 1 and 4, it seems important to set out in full the count that charged embezzlement, which was as follows:

"That R. H. Alexander, late of the county and state aforesaid, on the 30th day of September, in the year of our Lord one thousand nine hundred and twenty-four, with force and arms at Walhalla, in the county and state aforesaid, did willfully and unlawfully commit embezzlement with a fraudulent intention, that is to say, that he, the said R. H. Alexander, then and there being county treasurer of and for the County of Oconee, State of South Carolina, and then and there being intrusted by the County of Oconee,

State of South Carolina, with the care, keeping, and possession of large sums of money, the property of the County of Oconee, State of South Carolina, the amount of said sums of money being to the jury unknown, and the value of said sums of money to the jury unknown (in that he, the said R. H. Alexander, as county treasurer of and for the County of Oconee, State of South Carolina, did unlawfully and falsely swear to a false claim before J. B. S. Dendy, Notary Public for South Carolina, and clerk of the county board of the County of Oconee, State of South Carolina, as follows:

" 'State of South Carolina, Oconee County.

" 'Personally appeared before me R. H. Alexander, Co. Treas., who on oath, says that the within account is correctly itemized and is just and due for the sum of ten thousand two hundred thirty-five and 33/100 dollars, and that no part thereof has been paid by discount or otherwise.

" 'R. H. ALEXANDER, Co. Treas.

" 'Sworn to before me this 30th day of September, A. D. 1924.   J. B. S. DENDY [Seal] Notary Public for S. C.

" 'The County of Oconee, Dr.   To R. H. Alexander, County · Treasurer, P. O. Walhalla, S. C.

" 'To reimbursement borrowed money Enterprise Bank note see Boleman report (note dated Sept. 2, 1915). $10,-235.33,'

—when he, the said R. H. Alexander, well knew that the said County of Oconee, S. C., had paid to him said amount prior to September 30, 1924, and he, the said R. H. Alexander, well knew that the said County of Oconee, S. C., was not due to pay him any amount on this claim, and he, the said R. H. Alexander, well knew the said claim to be false; that, by virtue of said false claim as aforesaid, there was issued to the said R. H. Alexander, county treasurer of the County of Oconee, S. C., by J. B. S. Dendy, clerk of the county board of the County of Oconee, S. C., and by J. C. Shockley, supervisor of the County of Oconee, S. C., a

county check of the County of Oconee, S. C., to the county treasurer, as follows:

" 'No. 1006                                    $10,235.33.

" 'The State of South Carolina, Office of County Supervisor, County of Oconee, Walhalla, S. C., Sept. 30, 1924.

" 'To the County Treasurer:

" 'Pay to the order of R. H. Alexander, Co. Treas., the sum of ten thousand two hundred thirty-five and 33/100 dollars, on claim No. 1006, for borrowed money, audited and allowed out of Ord. funds for fiscal year 1924.

                    " 'J. C. Shockley, County Supervisor.

" 'Countersigned:   J. B. S. Dendy, Clerk of Board,' —the said check as aforesaid, being of the value of ten thousand two hundred thirty-five and 33/100 dollars, for which said amount was charged against and paid out by the said County of Oconee, S. C., and received by and credited to the said R. H. Alexander, and that he, the said R. H. Alexander, then and there did willfully, unlawfully, and feloniously, embezzle, take, and appropriate the said sum of ten thousand two hundred thirty-five and 33/100 dollars, good and lawful money of the United States of America, the denomination and issue to the jury unknown, of the value of ten thousand two hundred thirty-five and 33/100 dollars, to his own use, and purposes, with the intention of cheating and defrauding said County of Oconee, S. C., of the same and thereby did cheat and defraud the County of Oconee, S. C., of the same to the great damage of the said County of Oconee, S. C., ten thousand two hundred thirty-five and 33/100 dollars, against the form of the statute in such case made and provided, and against the peace and dignity of the state."

It will be noted that certain portions of the indictment have been placed within parenthesis.   The purpose of this will appear later.

To properly discuss exceptions 1 and 4, it is required to narrate, from the state's viewpoint, some of the evidence

adduced at the trial, which we undertake to do briefly. De-
fendant became treasurer of Oconee County on July 1, 1913,
and held the office until July 1, 1925, having been defeated
for renomination in the primary of 1924. By his books,
the books of the supervisor's office, the annual settlement
sheets made by the comptroller general with the county
officials of Oconee County, signed by the defendant, and
by other testimony, it was shown that large sums of public
moneys of the county were placed in his keeping during
each year of his service. On September 1, 1915, the county,
for money borrowed, made its note to the Enterprise Bank of
Walhalla for $10,235.33, payable January 1, 1916. On
January 7, 1916, the defendant made sworn claim, in the
customary manner, to the county board of commissioners
for $10,250.28, "to one note Enterprise Bank for borrowed
money due January 1st.". The added sum of $14.95 was
to care for interest due from January 1st to January 7th or
8th. The claim was approved, Mr. Foster then being county
supervisor; and, while the county check drawn in favor of
the defendant, on himself as county treasurer, was not pro-
duced (there being testimony that it could not be found),
the check book stubs of the supervisor's office showed issu-
ance of check No. 1898, on January 7, 1916, to cover the
claim. The note was paid to the bank by the defendant on
January 8, 1916. The bank had no other note of the county
till 1921; and at no time thereafter, while defendant was
treasurer, did it have, or was it paid, a note of like amount.
W. K. Boleman was engaged by the grand jury to audit the
books of the defendant in 1922. He reported, among other
things, that he had checked "borrowed money" and found
that on September 2, 1915, a note was made at the Enter-
prise Bank of Walhalla in the amount of $10,000; that the
note, including accumulated interest, had been paid by the
defendant, but no county warrant was issued to the defend-
ant therefor, and he recommended that warrant for $10,-
235.33 be given the defendant. Some two years later, on

September 30, 1924, after defendant's defeat for renomination, he presented to Supervisor Shockley his claim against the county for $10,235.33, for "reimbursement borrowed money Enterprise Bank note see Boleman report (note dated Sept. 2, 1915)." On September 30, 1924, Supervisor Shockley and the clerk of the county board, J. B. S. Dendy, issued to the defendant check to cover this claim, drawn on the county treasurer, payable out of the ordinary funds for the fiscal year 1924. This check was "canceled as a voucher, July 1, 1925," by County Auditor Pike, in the annual settlement. (The claim and check last referred to are the instruments described in the indictment). Supervisor Shockley testified that he gave the check of September 30, 1924, on the defendant's representation that he had failed to get a voucher for this item formerly, and that the check when he gave it to the defendant *"was worth its face value."* L. L. Wilkinson, certified public accountant, who audited the books of the defendant, testified, and showed from the books, that the defendant, about January 8, 1916 (the exact date not being entered), received credit for the county check No. 1898, for $10,250.28, and that he had credit for this item in the annual settlement of June 30, 1916; that defendant also had credit for the check of September 30, 1924, for $10,235.33, on his books, and in the annual settlement of July 1, 1925; that with the exception of $14.95, the additional interest, the credits were the same; that defendant was only entitled to one of them, the first; that by receiving credit for the last check *the money belonging to Oconee County held by Mr. Alexander was decreased in the sum of $10,235.33; that the county paid the Enterprise Bank note twice; that the last time it paid it the county lost the sum of $10,235.33; and that R. H. Alexander benefited by that.* Wilkinson also testified that he found the defendant to be short in his accounts as treasurer for the fiscal year 1924–1925 in the amount of $67,536.99. There was some testi-

mony as to erasures having been made in the defendant's books and as to some records being missing.

For the defendant, only one witness was sworn—Mr. Boleman, who examined his books at the instance of the grand jury. For the purpose of determining the appeal, it seems necessary to refer to only a little of his testimony. On his direct examination, he swore that he made the recommendation for the issuance to the defendant of the check for $10,235.33, as he did not find where defendant had credit for the item; that in all he found the defendant had been charged with "double charges" amounting to $25,000 or $30,000 in one year; that he found no evidence of any shortage. On cross examination, the witness stated that, if he had seen the claim of January 7, 1916, and the supervisor's check stub, showing issuance of the check to cover that claim, he would not have made the recommendation as to issuing a check to cover the note to the Enterprise Bank.

Embezzlement was not known as a crime at the common law. It is purely a statutory offense. Our statute on the subject is found at Section 459, Vol. 2, Code 1922. It simply declares that "all officers and other persons charged with the safe-keeping, transfer and disbursements of any public funds, who shall embezzle the same, shall be deemed guilty of felony"; and then the punishment for the crime is provided. One of the main objects of the statute was to reach cases of stealing, misappropriation, or conversion of public funds, by whatever name the acts may have been called, where the old laws against larceny and breach of trust permitted those who seemed to regard public funds as their own private property to escape with their spoils without any punishment. Persons of this last-mentioned class have been dignified to some extent by being referred to as "embezzlers" rather than as "thieves." While one charged with embezzlement is entitled to all the protection given accused persons under our Constitution and statutes, it was never

intended that persons who are guilty of using public funds
for their own benefit should escape punishment by resorting
to the same old technicalities that formerly availed those
charged with larceny. While preserving the rights of a de-
fendant in a case of this nature, the statute should be con-
strued broadly, to protect the taxpayers of the state, and the
counties thereof, who have intrusted their moneys with men
presumed to be honest. A narrow construction would tend
to defeat the very purpose for which the act was placed
among our laws.

Mr. Black, in his law dictionary, defines the term "em-
bezzlement" to be:

"The fraudulent appropriation to his own use or *benefit*
of property or money intrusted to him by another, by a clerk,
agent, trustee, public officer, or other person acting in a fi-
duciary character."

Reading our statute, with Mr. Black's definition in mind,
it appears, then, that our legislative enactment, succinctly
stated, makes it a felony for one charged with the safe-
keeping and disbursement of public funds to fraudulently
appropriate to his own use or *benefit* any of the funds in-
trusted to him.

Exceptions 1 and 4, especially the specifications of error
assigned therein, in addition to questioning the sufficiency
of the evidence in the case, go further and attack the first
count of the indictment. In a way, as it appears to us, the
attorneys for the appellant, in their able and interesting
argument, say that the appellant may have been proven to
have been guilty of embezzlement at some time during his
incumbency of the treasurer's office, but that there was no
proof—and certainly not sufficient proof—that he was guilty
of the particular embezzlement alleged in the indictment.
They argue that the indictment charges that the defendant
embezzled the sum of $10,235.33, a particular fund, on
September 30, 1924, and that the manner in which the of-
fense was committed is alleged with particularity, and that

the state established by the evidence at most, if anything, only acts of the defendant on September 30, 1924, and thereabout, which covered up, or attempted to hide, a former defalcation, and that the variance between the proof and the allegation is fatal.

The indictment, like some Supreme Court opinions (perhaps this one included), said too much—at least more than was necessary. We find no direct authority in our reported cases regarding indictments for embezzlement of public funds; in fact, only a few cases dealing in any way with this crime are reported. There are decisions concerning breach of trust with fraudulent intention, larceny, and obtaining goods and money by false pretenses, crimes akin in the moral code to embezzlement, but with so many distinguishing features in the law from embezzlement that we do not regard them as binding precedents when we come to consider the last-mentioned offense.

We are not able either to get much assistance, touching the subject of embezzlement, from the decisions of other jurisdictions, since, after all, the Courts of the several jurisdictions must always look to their respective statutes in determining questions pertaining to the crime. After much reference, however, to numerous decisions, textbooks, and encyclopedias, recognized as high authority, we have reached the conclusion that the learned Circuit Judge who presided at the trial in this case stated, ably and briefly, the essential elements of the crime, according to the terms of our statute, with reference to the indictment in the case at bar, when he instructed the jury as follows:

"You will observe, gentlemen, that the elements of the offense consist in this, as charged in this indictment: That there was a public officer; that public funds were intrusted to his safe-keeping, his transfer, and his disbursement; that he appropriated those funds to his own use; and that he did so with a fraudulent intent, as alleged in this indictment, with the intent to defraud and to cheat the County of

Oconee. Now those are the elements which constitute the offense of embezzlement. It is necessary that the state prove them and all of them, prove the official capacity of the person charged in this indictment, prove the receipt, the transfer, the disbursement, prove the misappropriation to his own use, and prove the fraudulent intent, in order to convict in this case on the first count."

With the purpose of simplifying indictments in criminal cases, to get away from the confusing and mystifying language of the old style of these instruments under the common law, and to prevent the defeat of justice so often by technicalities, the General Assembly some years back passed legislation concerning indictments, a part of which is now Section 89 of the Code of Criminal Procedure. In substance, Section 89 provides that an indictment for a statutory offense shall be deemed sufficient if the language thereof is so plainly stated that the nature of the offense charged may be easily understood, and that the same be alleged to be contrary to the statute in such case made and provided.

We have inclosed in parenthesis such matter contained in the indictment here which we think it was unnecessary to be alleged. Stripped of that surplusage, the indictment meets all the requirements of Section 89, relating to indictments, and conforms to the statute as to embezzlement. Deleting the portions of the indictment in parenthesis, there remains in the instrument allegations to this effect: That the defendant, Alexander, on September 30, 1924, did commit embezzlement under these circumstances; that he was county treasurer of Oconee County; that he was intrusted with the keeping of large sums of money; that he embezzled the sum of $10,235.33; that he intended to defraud Oconee County thereof; that he did defraud the county of the sum named; and that his act was against the form of the statute in such case made and provided.

It may be suggested that this Court should not disregard, and that the lower Court should not have disregarded, the surplusage matter, to which we have invited attention, and there may be authorities from jurisdictions other than this to support this suggestion. In matters of practice in our Courts, however, we ought to be guided by our own statutes and the decisions of this Court. It has been held in the case of the *State v. Ameker,* 73 S. C., 330; 53 S. E., 484, that:

"Any words not absolutely necessary to the indictment would be treated as immaterial, and therefore need not be stricken out."

In Ruling Case Law it is said that an indictment for embezzlement "must charge the crime with certainty and precision, alleging all the requisites of the offense, so that the party accused may know the general nature of the crime of which he is accused, that it may be easily understood by the jury, and that it may be pleaded in bar of another prosecution for the same offense"; but the same authority states that the averments need not be made with the same particularity required of indictments for obtaining money under false pretenses, and it is further announced therein: *"If more is alleged than necessary under the statute, as that the conversion was done by some means and in some manner unknown to the grand jurors,"* it is not thereby rendered demurrable. 9 R. C. L., par. 30, p. 1287.

It seems to us that the indictment in the case at bar, minus the unnecessary allegations inclosed in the parenthesis made by us, alleged all the requisites of the offense, not only under our statute, but according to the authority last cited. From the indictment, the defendant well knew the general nature of the crime charged against him; the offense alleged was easily understood by the jury; and the conviction here, based on the indictment, if it becomes necessary, may be pleaded in bar of another prosecution for the same offense, charged in the indictment. With our view of the indictment, disre-

garding the surplusage therein, we think the testimony, out-
lined before, was sufficient to support the essential allega-
tions made, and, especially so, when some legal principles,
which we think appellant's attorneys have overlooked, are
duly considered.

There was evidence that the defendant was intrusted an-
nually with large sums of money; that he was short above
$67,000—to have been short to that extent he must have
been intrusted with an amount equal to, or greater than, the
sum named. The amount named in the indictment, $10,-
235.33, evidently had been intrusted to him ·at some time,
for the check was drawn upon himself, as county treasurer,
at his own instance (an admission that he had at some time
held, and, perhaps, at the very time, that money), and Mr.
Shockley testified *the check was worth face value.*

The testimony did not show that the grand jury recom-
mended the Shockley check to be given to the defendant.
Boleman made that recommendation to the grand jury. It
was the duty of the defendant to know, and to show, that he
was entitled to this check and the proceeds thereof. If he
got it wrongfully, it did not relieve him to show that some
one else thought he should have it and had so recommended.
The fact that he waited around two years to make his claim
therefor, and then only after accountants other than Boleman
had audited his books, after his defeat, and when the comp-
troller general had demanded a full settlement with him
(there was also testimony to this effect), was a circumstance
going to show that he was not entitled to the check and that
he was so aware. The circumstances were sufficient also
to show that the defendant had seen, had even had in his
possession, the missing check that Boleman had not seen.

The defendant could have cashed the check. Instead of
doing this, he passed it on to the County Auditor and re-
ceived credit for the amount thereof in his settlement, just
the same as if he had gone to the bank, and had drawn
therefrom the money on the check, and exhibited this cash

to the auditor in his settlement, and turned the amount over to his successor. In Article 5 of Chapter 15, Volume 3, Code 1922, and particularly in Section 533 thereof, there are provisions which authorize County Auditors to give their respective county treasurers credit, in their settlements, for checks or vouchers drawn upon them by the County Supervisor. When the defendant presented the check of Supervisor Shockley to the auditor, it was the duty of that official to accept and cancel the same and to allow proper credit therefor. The defendant got the *benefit* of that credit, and the result was he did not produce, and was not compelled to produce, the sum of $10,235.33, as he should have done if he had not been able to produce the check.

We think there is much force in the principle announced in Ruling Case Law, that the gist of the offense of embezzlement is usually *a violation of relations of a fiduciary character.* 9 R. C. L., par. 2, p. 1264. There was plenty of evidence in this case that the defendant occupied a position, fiduciary in character, and that he violated the trust relations existing between him and the County of Oconee.

While it seems necessary, and we think it reasonable, that the State should be required to establish, in a case of this character, that there was a conversion on the part of the accused, but "this conversion may be either actual or constructive." 9 R. C. L., par. 16, p. 1275.

Again, it is stated, and we agree with the declaration, that:

"The means by which the fraudulent conversion is accomplished are immaterial. It may be effected by any exercise of the right of ownership inconsistent with the owner's rights, and with the nature and purposes of the trust." 20 C. J., 427.

In the case at bar there was considerable evidence to show *constructive conversion,* even if the proof of actual conversion was lacking. The evidence was sufficient also to establish that the defendant, by certain means, exercised to-

ward the public funds intrusted to his care a "right of ownership inconsistent with the owner's (Oconee County's) rights, and with the nature and purposes of the trust."

In our modern day, when taxes are mainly paid by checks, when county officials settle with each other, and with the officials of the State, with checks, vouchers, and warrants, rarely ever handling a dollar in actual cash money, it would be going to an extreme point if one would have to see with the eye and feel with the hand coins or currency passing into and out of the hands of the county officials before there could be a conviction for embezzlement. We do not conceive that the law so requires. If it does, the purpose of the statute against embezzlement may be easily defeated in many instances.

Another principle of law occurring to us which we think stands in the way of approval of the contentions of the appellant is the one that, under our law, time is not an element of the offense of embezzlement. We have no statute of limitation as to the offense. The State had the right, under our view of the indictment, to prove the offense, generally alleged, at any time prior to the finding of the indictment by the grand jury, regardless of the date alleged therein.

Giving the defendant the benefit of every position urged by him, as to the facts adduced from the testimony, there remains this obstacle in his path to the reversal of the judgment against him: There was sufficient testimony to show that at some time during his incumbency of the office of County Treasurer, and at the time of the finding of the indictment, he was "short" more than $67,000.00, and there was evidence to warrant the jury in believing that included in that sum was the particular amount of money stated in the indictment. The conclusion seems to us to be inevitable that the first and fourth exceptions must be overruled.

The second exception relates to a matter of testimony. While Boleman, defendant's witness, was being cross examined, he was asked if he was not

drunk at times during his examination of the books of the
county, and also if, during that period, he had not been ar-
rested by peace officers of the Town of Walhalla for "being
drunk and disorderly"; and, if he had not, for the offense,
put up a bond, which he forfeited. He replied in the nega-
tive. As testimony in reply, the State was permitted, over
the objection of the defendant, to show through Mayor
J. M. Moss, of Walhalla, and from the record book of the
municipality, that on September 18, 1922, during the time
Boleman was making his audit, that the witness was charged
before him with being "drunk" and that he failed to appear
and forfeited his bond of $5.00. It was urged that the con-
tradiction was on a collateral matter, and, therefore, incom-
petent. The trial Judge ruled that he would not allow the
reply testimony for the purpose of affecting the credibility
of Boleman, but he would permit it on the issue as to whether
or not the audit and report of Boleman were accurate and
to show if he was competent, at the time, to make an accu-
rate and proper report.

We cannot agree that the evidence offered by Mr. Moss
was on a collateral matter. If the witness was under the
influence of intoxicating liquors at the time he was making
his audit and submitting his report, that may or may not
have caused him to make an error in the very particular work
in which he was engaged. While we cannot say, it is pos-
sible that, due to his condition caused by the use of intoxi-
cating liquors, he was unable to find certain records that
other accountants did find. While it is well known that
whiskey may, at times, stimulate the brain of some men
temporarily, and aid them in entering figures and making
calculations, others are often affected by its use to the extent
of becoming nervous and unstrung, and sometimes the con-
dition brings about forgetfulness.

We find, also, in *Corpus Juris,* the following language:

"The ability of a witness to recall accurately the details of a transaction is largely affected by his mental and physical condition at the time when it occurred or when remembrance is suggested or attempted. Intoxication tends to impair accuracy both of observation and of memory." 23 C. J., 31.

Under the circumstances here we think the Circuit Judge did not commit prejudicial error in overruling the objection made by the defendant's attorneys, and the second exception is dismissed.

The defendant requested the presiding Judge to charge the jury as follows:

"I charge you that, when the accounts of a public officer have been made up and adjusted or settled by proper officers thereunto authorized, they are usually treated at least as *prima facie* evidence of the state of his financial obligation with the government, though they are not conclusive. But I charge you that, if you find that a full and complete annual settlement of the defendant with proper officers who are authorized to make it has been made, such settlement should be final and conclusive, unless there is fraud, mistake, or imposition in making such settlement, and I charge you that in reaching your conclusion as to whether or not the defendant has embezzled funds belonging to Oconee County, or has committed a breach of trust with a fraudulent intent, you have a right to take into consideration any intervening annual settlements that may have been made, for whatever they may be worth to you."

The Circuit Judge declined to charge the request as worded, for the reason, as he stated, that he considered it a charge upon the facts. Instead of the requested charge, however, he instructed the jury as follows:

"That, if there are introduced here public records of public officers having to do with the fiscal affairs of the county, you are to take that into consideration and con-

sider that as you would any other testimony, deducing from it that which is the truth."

We are inclined to the opinion that the Circuit Judge was right in refusing the request, for the reason given by him. In any event, however, the instruction, as given by the Circuit Judge, covered the main idea suggested by the request. It is not incumbent upon a trial Judge to charge any request in the exact language contained therein. Even if the request contains a sound principle of law, which is applicable to the case, and the Judge covers it in his own language, that is full compliance with our rules and practice. We fail to find any error here, and the third exception is held to be without merit.

The judgment of this Court is that the appeal be dismissed, and the judgment of the lower Court be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. JUSTICE COTHRAN dissents.

MR. ACTING ASSOCIATE JUSTICE R. O. PURDY (concurring) : On the argument, I was of the opinion that the judgment should be reversed. Mr. Justice Blease then held the views which are expressed at length in the opinion of a majority of the Court, written by him. After repeated study of this opinion and of the dissenting opinion by Mr. Justice Cothran, I have reached the conclusion that the judgment should be sustained. That the indictment intended to charge *the embezzlement of money* is manifest; that there are matters alleged in the indictment not pertinent to this charge is, I think, also manifest. Leaving out all references to the warrant, and taking the commencement and the conclusion of the indictment, we have a pleading aptly expressed, charging *the embezzlement of money*. The authorities cited sustain the view that these allegations can be treated as immaterial; certainly they are matters more evi-

dentiary than matters of pleading. I concur in the judgment.

MR. JUSTICE COTHRAN (dissenting): I am unable to agree with the opinion of Mr. Justice Blease in this case and will state the grounds of my dissent. This is an indictment under Section 459 of the Criminal Code, against the defendant, for embezzlement, while acting as County Treasurer of Oconee County. He was tried before his Honor, Judge Bonham, convicted and sentenced, and has appealed to this Court. The statute under which the indictment was presented reads thus:

"All officers * * * charged with the safekeeping, transfer and *disbursements* of any *public funds,* who shall embezzle *the same,* shall be deemed guilty of felony. * * * Provided, however, that the General Assembly * * * may remove the disability *upon payment in full of the principal and interest of the sum embezzled."* '

The definition of embezzlement by Mr. Black, quoted in the opinion of Mr. Justice Blease, is exceedingly clear:

"The fraudulent appropriation to his own use or benefit of *property or money* intrusted to him by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary capacity."

The observation of Mr. Justice Blease is equally clear and correct:

"Reading our statute, with Mr. Black's definition in mind, it appears then that our legislative enactment, succinctly stated, makes it a felony for one charged with the safekeeping and *disbursement of public funds* to fraudulently appropriate to his own use or benefit *any of the funds* intrusted to him." (Italics added.)

I think that there is a clear distinction between embezzlement of *property* and the embezzlement of *money.* Many cases may be cited holding that an indictment for the embezzlement of the one is not sustained by proof of the embezzlement of the other. *State v. Paulson,* 27 S. D., 24;

# 346

129 N. W., 558. *People v. Meseros,* 16 Cal. App., 277; 116 P., 679. *State v. Mispagel,* 207 Mo., 557; 106 S. W., 513. *Peters v. State,* 12 Ala. App., 133; 67 So., 723. *People v. Bartnett,* 15 Cal. App., 89; 113 P., 879. *People v. Davis,* 269 Ill., 256; 110 N. E., 9. *People v. Day,* 185 Mich., 68; 151 N. W., 640. *Hampton v. State,* 99 Miss., 176; 54 So., 722. *State v. Harcomb,* 48 Utah, 89; 158 P., 1096. *State v. Horne,* 62 Utah, 376; 220 P., 378. *State v. Peck,* 299 Mo., 454; 253 S. W., 1019. *State v. Hudson,* 93 W. Va., 435; 117 S. E., 122. *State v. Casleton,* 255 Mo., 201; 164 S. W., 492.

It is clear from the words of the statute that the embezzlement declared a felony therein is the frauduent appropiration of *money,* not any other species of property as a check or warrant would be. The statute not only specifically refers to *public funds* in the hands of the officer *for disbursement,* which could only mean *money,* but in the proviso the defaulter is permitted to apply to the General Assembly for the removal of the disability to hold office, consequent upon his conviction, "upon *payment* in full of the *principal and interest* of the *sum* embezzled," which as a matter of course could refer only to *money.*

We naturally look to, and the defendant is entitled to be tried upon, the allegations of the indictment purporting to charge him with a crime. "All of the elements of or facts necessary to the crime charged must be fully and clearly set out." 31 C. J., 650. "The Legislature, while it may simplify the form of an indictment or information, cannot dispense with the necessity of placing therein a distinct presentation of the offense containing allegations of all its essential elements." *Id.,* 651.

The Solicitor has manifestly attempted to comply with this rule, in formulating the present indictment, which sets forth specifically and in detail the facts which in his judgment have constituted the offense of embezzlement, in substance, as follows: That on September 30, 1924, while

County Treasurer and intrusted with the care, keeping, and possession of large sums of money, the property of Oconee County, the defendant committed the crime of embezzlement *in the following manner:* That he made out, swore to, and filed with the Clerk of the County Board, a false claim against the county for $10,235.33, claiming that it was for reimbursement to him of that amount paid by him to the Enterprise Bank in September, 1915, when he knew that the county had already reimbursed him therefor, and owed him nothing on that account; that upon said claim he had received from the Clerk of the County Board a county check for said amount, which was received by and credited to the defendant; that the defendant "then and there" appropriated and embezzled the said sum of $10,235.33.

It is held in the opinion of Mr. Justice Blease, that, notwithstanding the specific and detailed allegation in the indictment of the facts claimed by the State to have constituted the offense of embezzlement, it is permissible for this Court to disregard such specification as surplusage, and to allow the State to stand upon a general undefined charge of embezzlement.   I think that there are two perfectly sound reasons why this declaration cannot be sustained: In the first place that which is alleged in what is termed the *videlicet* of the indictment is intended to explain in what manner the embezzlement charged was committed; it is a material part of the indictment and cannot be disregarded any more than the *videlicet* to an indictment for forgery or perjury, for instance. If an indictment for forgery should contain a general charge of forgery and be followed by *videlicit* which showed that the transaction could not possibly have been a forgery, the *videlicet* cannot be disregarded, and practically annuls the charge.   So with perjury and other crimes. Even in a civil action for damages resulting from negligence, a general charge of negligence followed by a specific charge is limited to the specific charge.

"If the statement laid under a *videlicet* is material, and enters into the substance of the description of the offense, and is impossible or inconsistent with the premises, neither clause can be rejected as surplusage, and the indictment is void." *Maloney v. People,* 229 Ill., 593; 82 N. E., 389.

"An indictment which charges an offense in the general terms of the statute, followed by detailed statement of the facts constituting such offense, from which it affirmatively appears that no violation has necessarily been committed, is defective." *State v. Newman,* 29 N. M., 106; 219 P., 794

"The cases to which our attention has been directed, as an examination of them will demonstrate, in which the purporting clause is held mere surplusage, have reference to a simple variance with the tenor of the instrument. But, on the other hand, there is no case which goes to the extent of saying that even an unnecessary allegation that is repugnant and inconsistent with the main charge to the extent of charging that no offense has been committed will be treated as surplusage. This is a broad admission of record," which "the State cannot at pleasure deny." *State v. Leonard,* 171 Mo., 622; 71 S. W., 1017; 94 Am. St. Rep., 798.

"Where an indictment sufficiently charges the defendant with the crime, it is not impaired by the subsequent statement therein of the facts or circumstances under which it was committed, *unless such statement of itself constitutes a negation of the crime.*" *People v. Evanoff,* 45 Cal. App., 108; 187 P., 54.

In the second place, even if the *videlicet* contains unnecessary details, it cannot be regarded as surplusage.

In 19 Cyc., 424, it is said:

"If the pretense is described more minutely than is necessary, such description is a part of the indictment and cannot be treated as surplusage."

"It may be that the pretense was described more minutely in the indictment than was essential. However, only one pretense is alleged, and the words of particularity in respect

to it are a part of the indictment, and cannot be regarded as surplusage." *Cook v. State*, 162 Ala., 90; 50 So., 319, citing 19 Cyc., 423. *Cowan's Case*, 41 Tex. Cr. R., 617; 56 S. W., 751. *O'Connor's Case*, 30 Ala., 9; *Beasley's Case*, 59 Ala., 20; *Meeks' Case*, 117 Ala., 116; 23 So., 155.

"While it may be unnecessary to set out with particularity descriptive averments, yet when this has been done they cannot be ignored. They form part of the indictment, and cannot be treated as surplusage." *Cowan's Case*, 41 Tex. Cr. R., 617; 56 S. W., 751.

"If the pretense is described more minutely than is necessary, such description is part of the indictment and cannot be treated as surplusage." 25 C. J., 624.

See, also, *State v. Paulson*, 27 S. D., 24; 129 N. W., 558.

The testimony offered by the State was directed specifically to the establishment of, not the fact of a general undefined defalcation, but to the charge of embezzlement as defined and detailed in the indictment. It thus appeared that on September 1, 1915, the county borrowed $10,000 from the Enterprise Bank of Walhalla and a note therefor was given, payable January 1, 1916, for $10,235.33, the $235.33 representing the interest or discount. On January 8, 1916, the defendant, as County Treasurer, paid off the note, with $14.95 interest from January 1st to 7th, and obtained from the county supervisor a county warrant for $10,250.28 to reimburse himself by way of credit upon his account as county treasurer. Six years later, in 1922, the grand jury engaged W. K. Boleman to audit the books of the treasurer. He reported, contrary to the established and admitted fact, that the defendant had never received credit for the $10,235-.33 paid by him to the bank on January 8, 1916, and recommended that a county warrant be issued to the defendant for that amount, that he might obtain the credit to which he was supposed to be entitled. Some two years later, on September 30, 1924, acting upon the suggestion of Boleman, the defendant presented a claim against the county for the

amount, specifically stated to have been for reimbursement, and obtained from the supervisor a county warrant therefor, payable out of the ordinary funds of 1924.   Later the books were again audited, this time by Wilkinson, a certified public accountant.   He testified, what appears to be undisputed, that the defendant in *January, 1916,* received credit for the county warrant for $10,250.28 upon his books, and also in the annual settlement of June 30, 1916; that he also received credit for the warrant for $10,235.33 upon his books, and also in the annual settlement of July 1, 1925, showing unmistakably that the defendant had received a double credit for the same thing.   The accountant expressed his *legal conclusion* as follows: That by receiving credit for the last check or warrant the money belonging to Oconee County held by Mr. Alexander was decreased in the sum of $10,-235.33; that the county paid the Enterprise Bank note twice; that the last time it paid it the county lost the sum of $10,-235.33; and that R. H. Alexander benefited by that.   He also testified that he found the defendant short in his accounts as treasurer for the fiscal year 1924–1925, $67,536.-99, after deducting from the credits claimed by the defendant the duplicate warrant of $10,235.33.   I assume that the shortage was an accumulation during his entire occupation of the office.

The accounting made by Wilkinson is entitled to, and has received, my very great respect; but his legal conclusions, as the record shows, developed by the leading examination of counsel for the State, are so obviously misconceived as to be entitled to no consideration.   The defendant, of course, was entitled to only one credit for the amount paid by him to the bank.   The effect of receiving credit for the duplicate warrant could not have been to decrease "the money belonging to Oconee County held by Mr. Alexander," unless it be shown that at that time Alexander had that much cash on hand, of which there was no evidence, and which is a most improbable conception, in view of the

fact that, excluding this item of credit claimed by him, he was short $67,000.00. It was nothing more than the entry of a false credit item in his account which was detected and eliminated. His conclusion is equally at fault that "the county paid the Enterprise Bank note twice." As a matter of plain fact it only paid it once and Alexander was prevented from receiving any benefit from the duplicate warrant by the discovery that he had already received credit for his payment. So with his conclusion, "that the last time it paid it the county lost the sum of $10,235.33." This is impossible, as the transaction amounted to no more than an incident of bookkeeping which was corrected and eliminated. The county did not lose a dollar by the transaction, and, if so, the statement that Alexander benefited by it is equally untenable, for, if the county lost nothing, Alexander could have gained nothing.

While it may be true that the defendant destroyed or concealed the original warrant for which he had been allowed credit, induced Boleman to recommend the issuance of what developed to be a duplicate warrant, procured such duplicate and made use of it as a credit item against a large deficiency in his accounts, highly reprehensible and fraudulent conduct, knowing that he had already been allowed credit for the payment of the note to the bank, by means of the original warrant, *he did not thereby obtain a single dollar of the money belonging to Oconee County,* and cannot therefore be convicted by that transaction, upon which the indictment is based, of appropriating to his own use or benefit a single dollar. The true situation, as I view it, is that he was short in his accounts, due to the appropriation of the county's money in the years preceding the Boleman audit, whether with a criminal intent or not, it is not for me to say, and was quick to seize upon the recommendation of Boleman, *as a means of partially covering up the misappropriation that had already been committed.* If so he got nothing of the county's money and expected to get nothing.

It is probable that, if the defendant had been indicted for the fraudulent embezzlement of the $67,000 found by Wilkinson to be due to the county, his conduct in connection with the duplicate warrant may have been petitioned evidence, particularly if Boleman's recommendation had been suggested by Alexander, and the original warrant purposely destroyed or concealed. He is not, however, charged in this indictment with the embezzlement of this sum or any part of it; he is charged with the embezzlement of this particular warrant, a species of *property,* not *money,* by which the county is said to have lost $10,000, whereas, it has been conclusively shown that the county did not lose a dollar.

The injustice to the defendant of a conviction of embezzlement under the allegations of the indictment and the proof in this case appears to me manifest. The proper course to have pursued is to have indicted him for fraudulent embezzlement of the $67,000. Upon a trial of such a charge the State would have been compelled to show not only an appropriation, but a fraudulent appropriation. What the defendant's defense to such a charge cannot be known. It certainly cannot be assumed that he had none, however probable that fact may be. The issue in the case as tried was with reference to his alleged fraudulent conduct in connection with the duplicate warrant; a transaction which could not possibly be contorted into embezzlement, or the loss to the county of a single dollar.

I have not been able to find a statute in this State which makes it a specific criminal offense for an officer, state, or county intrusted with the disbursement of public funds to procure a credit voucher upon a false claim. That is what the defendant is shown to have done, accepting the state's evidence as true. It is a statutory offense under the act of Congress in relation to federal officers. Rev. Stat. § 5438. Barnes' Code, § 10366 (Comp. St., § 10199). Would it be contended that the violation of the federal

statute constituted, also, the offense of embezzlement? I hardly think so. Unquestionably the alleged conduct of the defendant would come within the provisions of Section 472 of the Criminal Code:

"Any public officer * * * who shall be guilty of any *official misconduct,* habitual negligence, habitual drunkenness, *corruption, fraud,* or oppression, shall be liable to indictment," etc.

If the defendant has violated any law *in connection with the duplicate warrant,* he has violated this statute, and not the statute under which he was indicted (Section 459, the embezzlement statute), for the simple reason that by that transaction he has not received a dollar, has not appropriated a dollar to his own use or benefit, and the county has not lost a dollar.

It developed upon the argument of the case that there are two other indictments pending against the defendant upon transactions quite similar to that in question. Shall he be convicted upon these as well, indicted for embezzling $67,-000 separately, and also indicted for violation of Section 472? If he shall be considered guilty of embezzlement in connection with the original warrant for $10,000, a like fate awaits him as to the other two duplicate warrants, and the conviction upon all three will not militate against his indictment for misappropriation of the $67,000, or of his violation of Section 472. All of which demonstrates that the prosecutions concluded and pending were instituted under a misconception of the law. I have no sympathy for the breach of a public or a private trust, but I do not think that righteous indignation should lead this Court into the perpetration of a judicial wrong.

In *Commonwealth v. Este,* 140 Mass., 279; 2 N. E., 769, it is held that where the defendant failed to charge himself with the proceeds of certain notes for borrowed money for the town of which he was treasurer and credited himself with certain payments made, presumably from such pro-

ceeds, "the fact that the payment was a means of embezzling other money in the future, *or covered up an embezzlement of other money in the past,* would not make it an embezzlement of the money paid. * * * Further, it is at least as likely that the way in which the defendant, in fact, *made himself better off by crediting* or by failing to charge himself, whatever his intent, was *by conceding an old deficiency, which, of course, would not be embezzlement,* although the instruction would have created a certain impression in the jury's mind." (The added italics are particularly apposite to the present case.)

An interesting case, illustrating the distinction which I have endeavored to present, is that of *State v. Baumhager,* 28 Minn., 226; 9 N. W., 704. There the defendant, succeeding his predecessor as county treasurer, found in the office an order upon the treasurer which he knew that his predecessor had redeemed, but had neglected to stamp "paid." The defendant falsely marked it as redeemed and paid by himself and falsely credited himself on his books with the amount of the order as having been disbursed by himself. Subsequently in a settlement with the auditor he presented the paid order and fraudulently obtained credit therefor. The amount of this order was $53.25 and at the time of the settlement with the auditor the defendant had cash on hand to the amount of $5,000. Upon indictment for embezzlement of the $53.25, converting it to his own use, the Court concluded that the evidence was sufficient to carry the case to the jury. The Court said:

"Now, the state of facts made to appear was that presumably defendant came into possession of this order as successor to Ring, finding it in the office when he took possession. Knowing that Ring had redeemed and paid it, but had neglected to mark it redeemed, he must also have known that he had no right to any credit for it, not having paid it. He subsequently falsely marks it paid and redeemed by himself, and falsely credits himself on the official books in his office

with the amount of the order as paid out by himself. He then returns it to the county auditor as redeemed by himself, for the purpose of obtaining credit for it, and in fact obtains credit for it on the auditor's books, thus reducing the amount for which he was chargeable or indebted to the county. This is done at a time when he has in his hands a large amount of public funds for which, in law, he stands debtor to the county. In the absence of any explanation, there can have been reasonably but one purpose for such conduct, viz.: to obtain a false credit, so as to enable him to appropriate an equal amount of the public funds to his own use. And in the absence of any such explanation or rebutting evidence tending to show that he had not in fact made such appropriation, we think it would fully warrant the inference that this intent was carried out."

The marked distinction between that case and the case at bar is that there the defendant had 100 times as much money on hand as the order amounted to, while here the defendant had $67,000 less than nothing. There it could reasonably have been inferred that after his settlement with the auditor, or possibly before, the defendant abstracted the amount of the order. Here that was a physical impossibility. The gist of embezzlement is an *actual conversion* of the county's money by means of a false voucher. If the voucher had been obtained for the purpose of covering up a past deficiency, taking credit for it upon his books and thus reducing *pro tanto* the amount of his debit balance, it is impossible that the transaction could have resulted in the conversion of a dollar.

In *Dickey v. State,* 65 Tex. Cr. R., 374; 144 S. W., 271, the defendant, city treasurer, was charged with embezzlement in taking a check for $314.25 which should have been credited to a certain fund and depositing it to the credit of another city fund for the purpose of covering up a prior defalcation in the latter fund. The Court held that the facts did constitute the offense charged, as the fact that the

transaction was for the purpose of covering up a past defalcation clearly demonstrated that no money had passed and that there had been no conversion.

The conviction is sought to be sustained upon the theory that the defendant fraudulently obtained the warrant and appropriated it to his own use; that he received the benefit of it as a credit upon his books and in his settlement with the auditor and comptroller general. There are two objections to this theory: In the first place the defendant is charged and has been convicted of embezzling *money,* not *property,* as the warrant was; and in the second place the statute does not embrace embezzlement of *property.*

Another consideration which I think is an insuperable bar to the conviction is that the crime of embezzlement is based upon the lawful possession by the officer of the funds embezzled, and his *subsequent* felonious conversion of them to his own use. If the fraudulent purpose was conceived before his possession began and was obtained by false representations with the intent to appropriate the funds to his own use, he was guilty of larceny and not embezzlement; the distinction between the two offenses being the initial lawfulness or unlawfulness of the possession.

In *State v. Kennedy* (Mo. App.), 239 S. W., 869, it is held:

"In order for defendant to have been guilty of the crime of embezzlement it was necessary that he either have actual or constructive possession of the goods, and that his intention to steal them was conceived only after he came into lawful possession of the same. If felonious intent existed at the time of the taking, then he was guilty of larceny"— citing cases.

The indictment alleges and the State stoutly maintains that the defendant had already received credit for the payment to the bank; that he knew that he had done so; that he fraudulently procured the duplicate warrant. If so, clearly he did not come into possession of the duplicate warrant

lawfully, and, if not, and the transaction was a fraud from the beginning, he cannot be held guilty of the crime of embezzlement, whatever other crime may have been committed.

I think, therefore, that the judgment of conviction under the present indictment should be set aside and that the case should be remanded to the Circuit Court, with instructions to direct a verdict of not guilty upon the first count of the indictment; the defendant having been already acquitted upon the second count. The effect of this acquittal upon the State's right to proceed upon· the charge of embezzling ·county funds, as indicated in the Wilkinson audit, is not at this time properly before the Court, and has not been considered.